UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT BARFIELD, #391969, ET AL. | : | CIVIL NO. 3:18CV01198 (MPS) |
| | : | |
| V. | : | |
| | : | |
| SCOTT SEMPLE, ET AL. | : | JUNE 6, 2019 |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

The defendants, former Department of Correction Commissioner Scott Semple and current Commissioner Rollin Cook, respectfully file this memorandum of law in opposition to plaintiffs' motion for class certification. Despite lengthy briefing from the plaintiffs they fail to explain why a class action is a cost effective, efficient procedural vehicle to litigate injunctive claims in this case. They incorrectly assert "Certification of the claims for relief would 'achieve economies of time, effort and expense' for all parties to this litigation." (ECF Doc. #51 at 24) citing *Amchem Products*, 521 U.S. at 615. To the contrary, class action litigation is far more complicated, extremely expensive, and is entirely contrary to notions of judicial economy and efficiency.

**Background and Facts**

The operative complaint (ECF Doc. #35) alleges that five incarcerated prisoner plaintiffs are infected with the Hepatitis C virus ("HCV"). Three of the five current plaintiffs (Barfield, Davis and Barberi) are receiving or have completed treatment for HCV. Compl., at ¶¶ 247, 284-85, 310. Plaintiffs Barfield, Davis and Barberi have completed treatment and have completely cleared the Hep C virus and are cured. (ECF Doc. #51 at 22).

**ORAL ARGUMENT REQUESTED**
**TESTIMONY MAY BE REQUIRED**

*See* Decl. of Dr. Pillai, ¶ ¶ 16, 17, 18, Exhibit 1, attached.  As such, none of these plaintiffs has a claim for injunctive relief.  In addition, the remaining plaintiffs, Tatem and Knapp, are currently receiving medically appropriate care for their HCV infection, including treatment with Direct Acting-Anti-viral medications (DAA's), and will have completed that care within the next few months.  *See* Declaration of Dr. Pillai at ¶¶ 25, 30, Exhibit 1.  Thus, by August no named plaintiff will have an actual claim for any injunctive or declaratory relief.

## ARGUMENT

## CLASS CERTIFICATION IS UNNECESSARY

Class certification is unnecessary because an injunction against Commissioner Cook in favor of any one of the five named plaintiffs would benefit the entire putative class. Where class certification is unnecessary, as it is here, it should be denied. *Galvan v. Levine*, 490 F.2d 1255 (2d Cir 1973) *cert. denied* 417 U.S. 936 (1974). In *Galvan*, at 1261, the Second Circuit stated:

> When plaintiffs' motion, after having made reference to the minimum requirements of Rule 23(a), Prerequisites to a Class Action, came to the additional requirements of Rule 23(b), Class Actions Maintainable, it singled out subdivision (b)(2). This authorizes maintenance of a class action when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." But insofar as the relief sought is prohibitory, an action seeking declaratory or injunctive relief against state officials on the ground of unconstitutionality of a statute or administrative practice is the archetype of one where class action designation is largely a formality, at least for the plaintiffs. As we have recently noted in  *Vulcan Society v. Civil Service Comm'n*, 490 F.2d 387 (1973), what is important in such a case for the plaintiffs or, more accurately, for their counsel, is that the judgment run to the benefit not only of the named plaintiffs but of all others similarly situated, *see Bailey v. Patterson*, 323 F.2d 201, 206-07 (5 Cir. 1963), *cert. denied*, 376 U.S. 910, 84 S. Ct. 666, 11 L. Ed. 2d 609 (1964); *cf. United States v. Hall*, 472 F.2d 261, 266 (5 Cir. 1972), as the judgment did here.

In *Foreman v. State of Connecticut*, 2003 WL 1056750 (D. Conn. 2003), Judge Droney denied a motion for class certification seeking only injunctive relief, stating, "The Court need not consider the parties' arguments for and against class certification based upon the plaintiffs' ability to meet the requirements of Fed.R.Civ.P. 23, as the Court finds that class certification is not warranted pursuant to *Galvan v. Levine,* 490 F.2d 1255 (2d Cir.1973)." *Foreman*, 2003 WL 1056750, at *1.  Plaintiffs' motion for class certification and moving papers cite a variety of decisions in other Hep C cases from other district courts, but none of them discuss the Second Circuit's reasonable and logical conclusion in *Galvan v. Levine*, and plaintiffs have failed to explain in any way why a class action is a superior form of action, or is cost effective, or would achieve economies of time or effort. To the contrary, class wide discovery would be extremely lengthy, costly and wholly unnecessary, especially here, where there seems to be developing some sort of consensus as to what an up-to-date 2019 prison policy might be to deal with the many issues related to Hep C.

As further noted by Judge Droney, "*Galvan* has been clarified by subsequent Second Circuit decisions:

> [T]he *Galvan* rule is narrow and only applies to those specific cases in which the plaintiffs suing a governmental agency seek *only* prospective injunctive relief ... the Second Circuit has modified *Galvan* and has directed the district courts to focus on the more relevant criteria of the defendant's admission to the exercise of a "policy," its accession to "the identity of issues as to all potential class litigants," and the declaration of its intention to abide by the ruling of a single action.

*Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of New York,* 201 F.R.D. 326, 334 (S.D.N.Y.2001) (citing *Hurley v. Ward,* 584 F.2d 609, 611–12 (2d Cir.1978)).  Applying these additional considerations here, the Court finds that class certification is unnecessary under *Galvan.*" *Foreman*, 2003 WL 1056750, at *2.  Here, the plaintiffs challenge the

3

existing, uniform policy of the defendant Commissioner governing HCV care for incarcerated persons, and the defendant Commissioner intends to continue to have one uniform policy that applies to all inmates presently or in the future who will be in the custody of the Connecticut Department of Correction.  Thus, the extensive extra and unnecessary work, time, effort and expense, that would be required to both give notice of a class action to all class members and also to conduct class-wide discovery, would be simplified and wholly obviated by the development of a policy and medical protocols that the Infectious Disease Specialists agree should apply to the putative plaintiff class.

Here, the plaintiffs concede that "individual damages claims against Semple individually are not plausibly available for class certification." (ECF Doc. 32-1 at 2). They further expressly seek Rule 23(b)(2) certification for injunctive and declaratory relief only. *See, e.g.* ECF Doc. #51 at 23. However, where, as here, the Commissioner of Correction agrees to be bound by a ruling as to one or more of the plaintiffs and apply that ruling to the entire inmate population, class certification is an unnecessary formality that unduly complicates the litigation.

<u>**NOT ALL FOUR PREREQUISITES ARE MET**</u>

***Numerosity***

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." The Second Circuit has ruled that "[n]umerosity is presumed at a level of 40 members," *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995), (ECF Doc. #51 at 10); *Kinkead v. Humana at Home, Inc.*, No. 3:15-CV-01637 (JAM), 2019 WL 1253331, at *5 (D. Conn. Mar. 18, 2019). Plaintiffs cite to *Consol. Rail Corp.* and the defendants do not contest numerosity.  Obviously, with an inmate population of nearly

13,000 inmates, there are more than 40 inmates who have chronic HCV infection. However, plaintiffs' supplemental memorandum then goes on to cite the Supreme Court's important point of emphasis, which is, to effectuate the purpose intended by Rule 23, *i.e.:* efficiency. "The purpose of a class action is to adjudicate the merits of a large number of claims in an efficient manner; sometimes the class members win, and sometimes the class members lose. But whether the class members will ultimately prevail on their claims is not part of the class-certification inquiry. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)." (ECF Doc. #51 at 13-14).

The defendants respectfully submit that adjudicating the injunctive relief claims in this case as a class action is certainly *not* more efficient. Instead, class action certification will unduly complicate the litigation, would spawn unmanageable and highly complicated class, and potential sub-class issues, conflict issues, discovery issues, and the case would disintegrate into a wide variety of collateral issues about "commonality and typicality" which as discussed further below vary widely and greatly from prisoner-patient to prisoner patient, based on the unique and individual treatment needs of each individual patient, and the individual professional medical judgment of the patient's primary care provider.

Unnecessary, intrusive and conflict-laden consequences of granting class certification are exemplified by potentially far reaching discovery requests of hundreds of inmate's medical records, without the individual knowledge or consent of the subject of the records, to produce protected and confidential health information, which would be not only enormously burdensome and expensive, but also wholly irrelevant to developing a modern, state-of-the-art clinical protocol and guidelines for screening, staging and treatment of Hepatitis C, which is the essence of the injunctive relief sought by the plaintiffs. Developing

such agreed upon medical protocols and guidelines does not require such far reaching, enormously expensive and burdensome discovery, or class certification. Instead, the medical experts are likely to agree upon what are the appropriate clinical guidelines to be followed. Indeed, such guidelines already exist, e.g. as set forth in the August 2018 Federal Bureau of Prisons Clinical Guidance manual attached to Dr. Pillai's accompanying Declaration, as Exhibit A.[1]  *See* Exhibit A, attached to Exhibit 1, hereto.

Moreover, as the Supreme Court admonished above, whether or not plaintiffs might prevail is not relevant to the class-certification inquiry. Nevertheless, the vast bulk of plaintiffs' class certification submission and moving papers reads much more like a summary judgment motion on the merits, which the defendants clearly dispute.  Indeed, the defendants have a pending motion to dismiss the plaintiffs' operative complaint (Doc. No. 36).  "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). Because a merits determination here is not appropriate, suffice it to say that plaintiffs' merits arguments are denied, and are quite irrelevant to the key question of whether a class action is the superior form of action to proceed, or whether, under *Galvan v. Levine, supra*, and Second Circuit precedent, it is far more efficient to manage this case with only five plaintiffs and address the merits with regard to five plaintiffs, and if an

---

[1] "*Federal Bureau of Prisons (BOP) Clinical Guidance is made available to the public for informational purposes only. The BOP does not warrant this guidance for any other purpose, and assumes no responsibility for any injury or damage resulting from the reliance thereof. Proper medical practice necessitates that all cases are evaluated on an individual basis and that treatment decisions are patient- specific. Consult the BOP Health Management Resources Web page to determine the date of the most recent update to this document: http://www.bop.gov/resources/health_care_mngmt.jsp.*"

injunction is appropriate, apply the medical and clinical protocols to all similarly situated inmates, without having to unduly complicate this litigation by granting class certification.

***Commonality***

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Each class must therefore involve a common question of law or fact capable of resolving a central issue in the validity of each class member's claim at once. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). *Kinkead v. Humana at Home, Inc.*, No. 3:15-CV-01637 (JAM), 2019 WL 1253331, at *6 (D. Conn. Mar. 18, 2019). Although plaintiffs argue that there are questions of law or fact which are "common" in reality, each individual prisoner-patient is completely different.

**Robert Barfield, #391969**

Plaintiffs propose a class which is defined as follows:

> **"All people who are or will be prisoners in the custody of the Connecticut Department of Correction, who have or will have Hepatitis C and have not yet been cured."**

See Pltfs' Supp. Memo, (ECF Doc. #51 at 9). Plaintiff Barfield has been treated with DAA's and is cured of the virus. Thus, he is not a member of the proposed class, under the plaintiffs' own definition. "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Tex. Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 2930, 41 L.Ed.2d 706 (1974))." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997). Thus, since Mr. Barfield does not fit within the class definition, he cannot be an adequate class representative, as he is not "part of the class." *Id.*

Importantly, on May 13, 2019, plaintiffs filed a Supplemental Notice of Authority (ECF Doc. #50) which included a copy of the Minnesota District Court's Memorandum of Decision in a similar Hep C case involving the Minnesota Department of Correction. In that decision (ECF Doc. #50-3) the District Court there found that the first named plaintiff, Ligons, as well as a second plaintiff, Bachan were *not adequate class representatives, and not proper parties to represent a class*. The Minnesota District Court noted, "Ligons and Buchan have been treated with DAAs; they have received all of the individual relief to which they would be entitled if they prevailed in this case."  *Id.* at 9. Like the first-named plaintiff here, the Minnesota inmates claimed they were still entitled to pursue class claims for injunctive relief. The District Court disagreed.  "Typically, if the named plaintiff's individual claim became moot before a class was certified, the entire case is moot, and the plaintiff is not entitled to pursue claims on behalf of the yet-to-be-certified class. *See United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1538 (2018)." *Id.* at 10.

The Minnesota District Court continued, stating, "Ligons's and Buchan's individual claims do not fit into any of these categories. Their claims became moot before (not after) class certification, and nothing about their claims makes them inherently incapable of being fully adjudicated before becoming moot." *Id.* at 12.  Accordingly, the District Court granted the defendants' summary judgment motion as to the first two named plaintiffs stating, "The Court therefore applies the ordinary rule that, if a named plaintiff's claim becomes moot before class certification, that claim must be dismissed without prejudice, and the named plaintiff cannot represent the class. *Hechenberger v. W. Elec. Co.*, 742 F.2d 453, 455 (8th Cir. 1984) ("The normal rule is that when claims of the named plaintiffs are moot before class certification dismissal of the action is required.")." *Id.* at 15.

Thus, plaintiffs' supplemental authority wholly undercuts the ability of Mr. Barfield to continue to represent this putative class. This mootness problem also applies with equal force to two other proposed plaintiff representatives, Mr. Davis and Mr. Barberi, who have both also been treated with direct acting-antivirals (DAA's) and have been cured, and they too do not fit within the class definition. The Second Circuit is in agreement with the mootness analysis of the Minnesota District Court, stating, "in general, if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot." *Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994) *(citing Board of Sch. Commissioners of Indianapolis v. Jacobs,* 420 U.S. 128, 129–30 (1975) (per curiam)).

## Curtis Davis, #89047

Curtis Davis similarly is not a member of the proposed class definition, which is defined as those inmates "who have not yet been cured." HCV treatment for Mr. Davis was both initiated and completed. He received treatment with a DAA, specifically, *Mavyret* for a course of eight (8) weeks. Mr. Davis completed his treatment and the virus cleared. Thus, he does not have issues in common with a class of persons who "have Hepatitis C and have not yet been cured." He is not a member of the class and his claims are moot and he cannot represent the class, as set forth in the Minnesota *Ligons* case.

## Jason Barberi #323247

Jason Barberi, like Mssrs. Barfield and Davis, similarly is not a member of the proposed class definition, which is defined as those inmates "who have not yet been cured." HCV treatment for Mr. Barberi was both initiated and completed. He received treatment with a DAA, specifically, *Mavyret* for a course of twelve (12) weeks. Mr. Barberi completed his treatment and the virus cleared. Thus, he does not have issues in common

with a class of persons who "have Hepatitis C and have not yet been cured." He is not a member of the class and his claims are moot and he cannot represent the class, as set forth in the Minnesota *Ligons* case.

**Darnell Tatem #13073**

Mr. Tatem is being followed by the Infectious Disease Specialist (IDS). He undergoes frequent and periodic monitoring, with his last Fibroscan on October 1, 2018. He is not a common or typical member of the class as he has a type of chronic Hepatitis C infection which is unique and individual to him, and he has been consistently asymptomatic, and consistently Metavir Stage F0. Unlike in the Minnesota case, the Connecticut DOC does not have a blanket rule of denying care to inmates who are below F2. Instead, each clinical decision is a decision made in consultation and communication with the patient, and is based on a number of unique and individual factors, not readily amenable to class certification commonality and typicality analysis.

Mr. Tatem is consistently stable and he was and is clinically described as "naïve Hepatitis C." He does not have a history of overt liver disease. He was seen by the IDS on February 15, 2019, and because at that time there was no medical necessity for immediate treatment, and further because Mr. Tatem was consistently monitored to be a stable, non-progressing F0 with no liver significant fibrosis, he was determined to be a "Long Term Non-Progressor." The treatment plan developed was to continue close and consistent periodic observation, including obtaining serologic markers every 6 months and FibroScan yearly, and obtaining UTD Hepatitis B serology.

On May 17, 2019, the IDS, Dr. Pillai, saw Mr. Tatem again at Cheshire CI. Mr. Tatem continues to exhibit no signs of any fibrosis and that is the reason why, in the

professional judgment of Dr. Pillai, he had not yet been treated. Dr. Pillai, though, during his conversations with Mr. Tatem on May 17, 2019, determined that Mr. Tatem is a highly motivated patient and is requesting treatment. Thus, based on the patient's motivation and interest in treatment, Dr. Pillai recommended treatment with Mavyret x 8 weeks. Dr. Pillai is looking into see whether he can start treatment as soon as possible, perhaps as soon as June 7, 2019, though there is no risk of any harm to the patient. *See* Declaration of Dr. Pillai, at ¶25, Exhibit 1.

Based on the foregoing, it is clear that Mr. Tatem is not an appropriate or adequate class representative in a case alleging deliberate indifference to serious medical needs. There isn't a scintilla of evidence that any physician or other health care provider has been "deliberately indifferent" to Mr. Tatem.  To the contrary, as a stable, naïve non-progressor, it was entirely appropriate and well within acceptable community standards to take annual Fibroscans and to take serological studies every six months. Due to recent requests by Mr. Tatem to Dr. Pillai he has recently indicated a strong desire to begin DAA treatment and Dr. Pillai has recommended and will be facilitating the beginning of DAA treatment for Mr. Tatem. There has been no risk of any harm or injury to Mr. Tatem, as he is an F0 and a non-progressor. Thus, lacking any actual injury, Mr. Tatem lacks standing to represent a class.  *See Lewis v Casey*, 518 U.S. 343, 357 (1996)("even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class") (other citations omitted).

Further, there is not even a scintilla of evidence to support a claim of deliberate indifference as to Mr. Tatem, even assuming *arguendo*, that his naïve chronic, HCV infection, which is stable, non-progressing, F0 Metavir without any liver disease, is a

serious medical condition.   Mr. Tatem has no evidence that anyone demonstrated the requisite "sufficiently culpable state of mind" to meet the subjective prong of a deliberate indifference case. *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).  The undisputed evidence precludes a finding that the defendants acted with the requisite culpable state of mind in treating Mr. Tatem, or any of the five named plaintiffs. *Gonzales v. Nowak*, 443 F. App'x 615, 617 (2d Cir. 2011). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law. *Farmer,* 511 U.S. at 839–40, 114 S.Ct. 1970. This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result. *Id.* at 836–37, 114 S.Ct. 1970." *Salahuddin*, 467 F.3d at 280.   Because the facts of Mr. Tatem's case demonstrate that he has a unique form of HCV that is inactive, he lacks actual injury and he fails to state a claim, he is not an adequate class representative, and his claims should be dismissed.

**John Knapp #424033**

Mr. Knapp is also not typical or common with respect to the claims of the class with respect to both his legal status and his medical status.   Further, there is no case or controversy with regard to Mr. Knapp as both the plaintiffs and the defendants agree that Mr. Knapp should be treated with DAA treatment as soon as possible, and in fact was started on Mavyret on May 24, 2019.  *See* Pillai declaration, ¶29, Exhibit 1. Unlike the other four named plaintiffs, Mr. Knapp was a pre-trial detainee, who was able to bond out at any time. Mr. Knapp was not sentenced until October 25, 2018,[2] and was being followed by his

---

[2] *See* Amended Complaint (ECF Doc. #35), ¶ 249. Unlike the other four plaintiffs, Mr. Knapp was a pre-trial detainee from March 9, 2018 until October 25, 2018. ¶250. Thus, at any point during that time period of approximately six months, Mr. Knapp might have not

primary care provider at his pre-trial facility. *See* Declaration of Michelle DeVeau, at ¶ 10, Exhibit 2; Pillai Decl. ¶ 26, Exhibit 1.  Once sentenced, Mr. Knapp was classified and was moved to Cybulski CI and promptly referred to the IDS in December 2018.  His initial Hep C labs were done on December 12, 2018. Mr. Knapp's initial encounter with the IDS was on January 30, 2019. Mr. Knapp's Fibro scan was done on March 4, 2019, and an Ultra Sound (U/S) of Mr. Knapp's liver was completed March 27, 2019.  Mr. Knapp's individualized plan of treatment includes, but is not limited to Mavyret for 12 weeks as the IDS have determined he is a good candidate for Mavyret. Mr. Knapp is also being scheduled for a GI evaluation for variceal screening and HCC[3] screening by U/S every 6 months. Mr. Knapp needs and has been ordered Pneumovax x 1 dose. As with Mr. Tatem, there is not one iota of evidence to support a claim of deliberate indifference to Mr. Knapp's medical needs.

**The CT DOC Is Not Common or Typical; Unlike Other States -- A Unified System**

The plaintiff relies heavily on cases from other jurisdictions such as Massachusetts, Pennsylvania, Florida, or Minnesota, for example, states which all have county governments and county jails which hold unsentenced pre-trial detainees. The state systems there hold long-term convicted and sentenced prisoners.  Connecticut, on the other hand, runs a unified state correctional system which all prisoners, both unsentenced pre-trial detainees and convicted sentenced offenders, are all commingled into one unified system. Thus, as is exemplified by Mr. Knapp, a vast number of Connecticut inmates are very briefly incarcerated in the CT unified state system after arrest, but are released in a

---

returned from court, having had his bond reduced to a Promise to Appear (PTA) or indeed, having the charges dismissed entirely.
[3] Hepatocellular carcinoma (HCC) is the most common type of primary liver cancer in adults.

matter of days.  As is easily demonstrated by the irrefutable data, plaintiff's proposed class definition is overly broad, unwieldy, and wholly unworkable.

In a research report run by the DOC Research Division, for calendar year 2018, there were 13,344 offenders who left DOC on an unsentenced discharge, or who turned from accused to sentenced during calendar year 2018. *See* Exhibit 2, Deveau Decl., Exhibit A, attached hereto. Of that number, thousands of individuals discharge in a matter of one, two or several days.  As the report states, 984 individuals do not even stay one full day, and their "stay days" is listed as zero. Deveau Decl. Exh. A. Further, another 1155 individuals are released after one day, 532 after two days, and 446 more are released after three days. A total of 4114 individuals are released after seven days. Id.  Nevertheless, all of these people, if known to be Hepatitis C positive, and who have not yet been cured, would fall within the definition of  *"All people who are or will be prisoners in the custody of the Connecticut Department of Correction, who have or will have Hepatitis C and have not yet been cured."*  Further, the study shows that 8,376 individuals stay 56 days, which is the length of an eight week course of treatment with Mavyret.  This does not include any time for initial screening, testing, staging, and possible Ultra Sound testing. A total of 9,702 individuals have a length of stay of 84 days, a twelve week course of DAA treatment. Exhibit A to DeVeau Decl.

Having an overly broad class definition makes the subsequent requirements of giving notice to the class, as well as developing common-sense clinical guidelines and protocols for HCV treatment extremely complicated, and completely unworkable.  The median length of stay for unsentenced inmates is 30 days, and the mean length of stay is 78 days. Exhibit 2, Deveau Decl. ¶ 18. Only 2,207 inmates who are unsentenced, pretrial

detainees stay more than 20 weeks, (140 days), which is the shortest amount of time that, in an ideal world, an inmate might be screened, staged, evaluated with other appropriate tests, and if a good candidate for DAA's, be treated to completion with DAA's.  This means that 11,137 unsentenced inmates would not even be in a DOC facility long enough to be screened, staged, evaluated and treated. Nevertheless, plaintiffs' proposed definition would encompass a fair portion of these offenders if known to be infected with chronic HCV, and if not cured. Plaintiff's proposed class is non-sensical in a unified correctional system. Further, plaintiffs' reliance on cases from other jurisdictions that have separate county jail systems for pretrial detainees and state systems for sentenced inmates are for the most part inapplicable to the practical realities of running a unified correctional system such as the CT DOC.

**Plaintiffs Knapp and Tatem Are Not Adequate Class Representatives for the Additional Reason They Failed to Exhaust Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") of 1996, 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is mandatory for any prisoner challenging the conditions of his confinement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory.") (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001) ).

Exhaustion under the PLRA requires "proper exhaustion," meaning full compliance with administrative procedures and deadlines. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Ruggiero v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006). "An 'untimely or

otherwise procedurally defective administrative grievance' ... does not constitute proper exhaustion." *Snyder v. Whittier*, 428 F. App'x 89, 91 (2d Cir. 2011) (quoting *Woodford*, 548 U.S. at 83-84). To properly exhaust a claim, a prisoner must comply with the prison grievance procedures, including utilizing each step of the administrative appeal process. *Id.* (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

DOC Administrative Directive 8.9, Exhibit 4, attached hereto, outlines the exhaustion procedure for inmates seeking review or otherwise challenging conduct by health care professionals: There are two types of Health Services Review: Diagnosis and Treatment, and Review of an Administrative Issue. Under Administrative Directive 8.9, an inmate seeking either type of review must first attempt to seek informal resolution before filing a formal request for a Health Services Review. If an inmate is not happy with the informal resolution of his or her issue, he or she may file an Inmate Administrative Remedy Form seeking either (a) a review of a medical decision regarding the diagnosis or treatment, or lack of a diagnosis or treatment, of a medical condition; or (b) a review of a practice, procedure, policy or administrative provision, or the alleged improper conduct of a health services provider. If an inmate is not satisfied with the response to his or her request for review of a procedure or practice, he or she may appeal the decision within ten business days of receiving the decision.[4]

---

[4] This Court, recently in *Linarte v. Furey*, No. 3:19-CV-435 (MPS), 2019 WL 1644236, at *2 (D. Conn. Apr. 16, 2019), stated "Utilization Review is the 'process by which requests for specialty care, treatment, services, and/or diagnostic testing [are] reviewed for approval based on standard guidelines.' Department of Correction Administrative Directive 8.9(3)(K), https://portal/ct/gov/DOC/AD/AD-Chapter-8 (last visited Apr. 11, 2019)." This Court also stated that the Court "takes judicial notice of the Department of Correction Administrative Directives. *See Chambers v. Johnpierre*, No. 3:14cv1802(VAB), 2016 WL 5745083, at *3 n.4 (D. Conn. Sept. 30, 2016) (citing *Nicholson v. Murphy*, No. 3:03-cv-1815(MRK), 2003

Once an appeal is filed, the health services provider or the designated facility health services director must decide the appeal within fifteen business days of receiving the appeal. If the issue being raised relates to a health services policy of the Department, the inmate may appeal to the DOC Director of Health Services within ten business days of receiving the decision from the health services provider or designated facility health services director. *Minnifield v. Dolan*, No. 3:14-CV-1580 (VAB), 2017 WL 1230840, *6 (D. Conn. Mar. 30, 2017) (citations and internal quotation marks omitted); *see* DOC Admin. Dir. 8.9, [Exhibit 4, attached hereto].  *See also Dorlette v. Wu*, No. 3:16-CV-318 (VAB), 2019 WL 1284812, at *6–7 (D. Conn. Mar. 20, 2019).

With these legal standards in mind, and applying them to the facts of this case, it is clear that class certification should not be granted because every potential putative class member, in order to have a cause of action, needs to exhaust administrative remedies. It is undisputed that Mr. Knapp did not file any grievances at all. Mr. Tatem failed to fully and properly exhaust, after his original grievance was returned to him without disposition. See Richeson Decl. ¶¶ 4, 5, Exhibit 3, attached hereto.  Thus, they failed to meet the requirements of *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) and *Jones v. Bock*, 549 U.S. 199, 218 (2007), failing to meet each procedural step of the administrative appeal process. Neither Mr. Knapp nor Mr. Tatem, can "bootstrap" their claims and avoid the exhaustion requirement by riding the coattails of say, Mr. Barfield, for example, who arguably did

---

WL 22909867, at *7 n.2 (D. Conn. Sept. 19, 2003) )." *Linarte v. Furey*, No. 3:19-CV-435 (MPS), 2019 WL 1644236, at *2 (D. Conn. Apr. 16, 2019).

exhaust.[5]  Special circumstances do not excuse an inmate's failure to meet the exhaustion requirement. *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) ("The PLRA's history (just like its text) thus refutes a "special circumstances" exception to its rule of exhaustion."). *Harvin v. Chapdelaine*, No. 3:16-CV-1616 (VAB), 2017 WL 3725611, at *4 (D. Conn. Aug. 29, 2017)(in lawsuit with four prisoner plaintiffs requiring each one to show cause why each one had fully exhausted, and dismissing, in part for failure to exhaust and failure to state a claim).

Furthermore, prisoners must comply with all procedural rules regarding the grievance process before commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006) (proper exhaustion requires "using all steps that the agency holds out and doing so properly" and "demands compliance with agency deadlines and other critical procedural rules"). Completing the exhaustion process after a federal action has been filed does not, therefore, satisfy the exhaustion requirement. *See Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001) ("To begin, the plain language of § 1997e(a), providing that no action shall be brought until such administrative remedies as are available are exhausted, suggests that exhaustion prior to commencement of a § 1983 action is mandated.") (internal quotation marks omitted). "[C]ourts must take care not to frustrate the policy concerns underlying § 1997e(a) by allowing inmate-plaintiffs to file or proceed with lawsuits before exhausting administrative remedies." *Id. Harvin v. Chapdelaine*, No. 3:16-CV-1616 (VAB), 2017 WL 3725611, at *4 (D. Conn. Aug. 29, 2017).

---

[5] Defendants do not address the exhaustion claims of plaintiffs Barfield, Barberi and Davis, since they have been treated and cured, and themselves are not within the definition of the class.

The exhaustion requirement of the PLRA further complicates consideration of plaintiffs' motion for class certification, and as explained above, consistent with United States Supreme Court and Second Circuit case law, requires dismissal of both Knapp and Tatem's claims.  None of the cases cited by the plaintiffs in their memorandum of law discuss PLRA exhaustion, and thus, ignore a federal statute as well as well-established case law requiring full and proper exhaustion. The exhaustion analysis further demonstrates why class certification in this case is not appropriate, unduly complicates the litigation, and plaintiffs' motion for class certification should be denied for these additional reasons.

**Plaintiffs Fail to Meet The Adequacy Requirement of Rule 23(a)(4)**

In plaintiffs' supplemental memorandum, plaintiffs assert in conclusory fashion that they "surmount the adequacy hurdle." However, they do not ever address the potential conflict issues that arise when certain individuals, for example, potentially Mr. Barfield, is seeking individual money damages, now that he has been cured, while at the same time not even being within the proposed class definition.  As plaintiffs point out, adequacy has several aspects to it, including having both adequate class representatives, which as discussed, plaintiffs fail to meet, as well as adequate counsel. "Under Rule 23(a)(4), adequacy of representation is measured by two standards. First, class counsel must be 'qualified, experienced and generally able' to conduct the litigation. Second, the class members must not have interests that are 'antagonistic' to one another. *See Eisen,* 391 F.2d at 562. *In re Drexel Burnham Lambert Grp., Inc.,* 960 F.2d 285, 291 (2d Cir. 1992). As Judge Cabranes wrote, in the  *Colonial Realty* litigation, "If the plaintiffs are unable to satisfy even one of these [Rule 23(a) 1 through 4]  requirements, however, their petition for

certification must fail. *See In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 290 (2d Cir.1992); *Stoudt v. E.F. Hutton & Co., Inc.,* 121 F.R.D. 36, 38 (S.D.N.Y.1988); *Gruber,* 679 F.Supp. at 183; 3B James Wm. Moore et al., *Moore's Federal Practice* ¶ 23.03 at 23–97 (2d ed. 1992)." *In re Colonial P'ship Litig.,* No. H-90-829 (JAC), 1993 WL 306526, at *1 (D. Conn. Feb. 10, 1993).

"To determine whether the putative class representative is adequate under Rule 23(a)(4), the court should consider (1) potential conflict between the named plaintiffs and the absent class members,…" *In re Colonial P'ship Litig.,* No. H-90-829 (JAC), 1993 WL 306526, at *5 (D. Conn. Feb. 10, 1993). Plaintiffs fail to discuss and gloss over the fact that each of the five named plaintiffs has completed, is, or very imminently will be receiving, treatment with DAA's and is not within the class definition. Thus, their only arguable claim is an individual claim for money damages. The named plaintiffs have a conflict with the class. They are seeking, and at this point only have a claim for money damages (although as a practical matter it is barred by qualified immunity).[6] The absent class members, to the extent they know they have Hepatitis C, and want treatment, want something different, treatment and a cure. To avoid these conflicts, in order to streamline the case, the Minnesota District Court in *Ligons*, jettisoned all of the money damages claims and dismissed plaintiffs for whom the injunctive claims had become moot. See ECF Doc. #50-3 at 34 (dismissing all money damages claims, without prejudice, presumably to bring

---

[6] In supplying this Court with supplemental authority, plaintiff's rely on the Minnesota District Court's memorandum of decision in the *Ligons* litigation, (ECF Doc. #50-3) in which the District Court noted in relevant part, "At the hearing, the Court identified various problems with plaintiffs' case, including that the named plaintiffs' claims for injunctive relief had become moot, that all claims for damages *were likely barred by qualified immunity,…" Id. at 8.*

individual money damages actions, but noting that they would likely be barred by qualified immunity).

As was the case in the *Amchem* case, there are conflicts between the named plaintiffs who have been cured, and can arguably only seek money damages, and also amongst the named plaintiffs, who each have varying individual and unique medical claims, just as in *Amchem*, where "named parties with diverse medical conditions sought to act on behalf of a single giant class rather than on behalf of discrete subclasses. In significant respects, the interests of those within the single class are not aligned. Most saliently, for the currently injured, the critical goal is generous immediate payments." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 (1997). There is also a significant problem with the overly broad and unworkable class definition, which complicates the issue of notice, as the *Amchem* court noted that there would be tremendous "[i]mpediments to the provision of adequate notice," and many inmates may not even know of their exposure to Hep C or possible chronic HCV infection, as they have never requested testing or treatment, and like the putative class members in *Amchem*, they may not realize the extent of the harm, if any, they may incur. *Id. at* 628.

As discussed above, since the named plaintiffs themselves do not fit within or meet the class definition, and further, because named parties with diverse and unique medical conditions do not satisfy the commonality, typicality or adequate class representative requirements, it is not necessary to address the issue of the adequacy and experience of class counsel. On this latter point, the defendants take no position.

## **CONCLUSION**

For all the foregoing reasons, the motion for class certification should be denied.

DEFENDANT
Rollin Cook

WILLIAM TONG
ATTORNEY GENERAL


BY: _/s/ Steven R. Strom_____

    Steven R. Strom
    Assistant Attorney General
    110 Sherman Street
    Hartford, CT 06105
    Federal bar #ct01211
    Tel.:  (860) 808-5450
    Fax:  (860) 808-5591
    E-mail: steven.strom@ct.gov


BY: _/s/ Terrence M. O'Neill_____

    Terrence M. O'Neill
    Assistant Attorney General
    110 Sherman Street
    Hartford, CT 06105
    Federal Bar #ct10835
    Tel.:  (860) 808-5450
    Fax:  (860) 808-5591
    E-mail:  terrence.oneill@ct.gov


## CERTIFICATION

I hereby certify that on June 6, 2019, a copy of the foregoing was filed electronically.

Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic

filing system.  Parties may access this filing through the Court's system.


_/s/ Terrence M. O'Neill_____

Terrence M. O'Neill
Assistant Attorney General