UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
                                                )
ROBERT BARFIELD                                 )
        Plaintiff                               )        CIVIL ACTION NO.:
                                                )            3:18-cv-1198 (MPS)
                                                )
V.                                              )
                                                )
ROLLIN COOK                                     )
        Defendant, in his official capacity     )
        As Commissioner of the Connecticut      )
        Department of Correction                )        JUNE 20, 2019
_____)

## PLAINTIFFS' REPLY TO DEFENDANT COOK'S OBJECTION
## TO MOTION FOR CLASS CERTIFICATION

Pursuant to this Court's order dated December 5, 2018 (doc. #26), Plaintiffs Robert

Barfield et al submit this reply to Defendant Rollin Cook's objection to Plaintiff's motion to class

certification pursuant to Fed. R. Civ. P. 23 seeking a class of all people who are or will be

prisoners in the custody of Defendant Rollin Cook's Connecticut Department of Correction

("CDOC" or "CT DOC"), and who have or will have Hepatitis C ("HCV") while in custody and have

not yet been treated.

Defendant Cook's Memorandum of Law In Opposition to Motion for Class Certification

(doc. 52, dated June 6, 2019) is hereinafter referred to as "Opposition."

The proposed class, in this action seeking declaratory and injunctive relief, satisfies the

prerequisites of Rule 23(a) and (b). Plaintiff attaches several additional exhibits to this reply,

1

and submits them all in support of the original Motion for Class Certification, dated December 20, 2018, and its accompanying Memorandum of Law (hereinafter "Memorandum") and the Supplemental Memorandum in Support of Class Certification, dated May 15, 2019 (doc. 51)(hereinafter "Supplemental Memorandum").

"Only in Superman Comics' Bizarro world, where reality is turned upside down,"[1] can Defendant Cook's Opposition maintain that a class action for resolution of the Hepatitis C issue would be a more complicated, extremely expensive and contrary to the notions of judicial economy and efficiency. Opposition, P1.

I.        **Plaintiffs Can Surmount the Four-Prong *Galvan* Doctrine**

While Plaintiffs would like to see Defendant Cook's concessions on numerosity and a potential consent decree as a major victory, here, where class membership is a ticket to a cure for a deadly disease, Defendant Cook's undefined offer seems an unenforceable consolation prize designed to avoid more serious oversight of the HCV epidemic in Connecticut prisons.

*Galvan v. Levine*, 490 F.2d 1255 (2d Cir. 1973) remains good law, and the *Galvan* Doctrine is another name for the necessity test. See William Rubenstein, 2 Newberg on Class Actions, §4:35 (December 2015). The *Galvan* Doctrine is not the final word on consent decrees in these HCV cases, nor should it be. Since Defendant Cook's Opposition failed to enumerate all

---

[1] *Natural Resources Defense Council, Inc.* v. *Daley*, 341 U.S. App. D.C. 119, 209 F.3d 747, 754 (2000)

four points of the inquiry and only focused on the first point, the *Galvan* Doctrine states:

> Courts have focused on four factors in determining whether class certification is necessary under *Galv[a]n*. First, notwithstanding the presumption that government officials will abide by a court's decision as to similarly situated individuals, an affirmative statement from the government defendant that it will apply any relief across the board militates against the need for class certification. Second, withdrawal of the challenged action or non-enforcement of the challenged statute militates against the need for class certification. Third, the type of relief sought can affect whether class certification is necessary. Courts have found that where the relief sought is merely a declaration that a statute or policy is unconstitutional, denial of class certification is more appropriate than where plaintiffs seek complex, affirmative relief[.] Fourth, courts also consider whether the claims raised by plaintiffs are likely to become moot, making class certification necessary to prevent the action from becoming moot.

(Internal quotations and citations omitted.) *Blecher v. Dept. of Housing Preservation & Development,* 92 Civ. 8760 (CSH), 1994 U.S. Dist. LEXIS 4969 at *13-14 (S.D.N.Y. Apr. 15, 1994).

In a similar case, the HCV class action seeking to force Washington state Medicaid to provide direct acting antivirals to a larger group of HCV-positive patients, the district court ruled against the defendant Washington Health Care Authority's ("WHCA") use of the necessity test.

> The WHCA argues that class certification is "unnecessary" because the preliminary injunction benefits all class members regardless of whether they are formally certified. As Plaintiffs argue in response, however, necessity is not a required showing for certification under Fed. R. Civ. P. 23(b)(2). Rule 23 clearly sets forth the required findings a court must make prior to certifying a class action and necessity is not a listed requirement. In fact, class certification may be appropriate even if the requested relief could be obtained through individual lawsuits. Other courts have declined to impose a necessity requirement and this Court follows suit.

(Internal citations and quotations omitted.) *B.E. and A.R. et al v. Teeter*, 2016 U.S. Dist. Lexis 95548 at *5 (W.D. WA July 21, 2016). *Abu Jamal v. Kerestes*, 2016 U.S. Dist. Lexis 117379 at *42

- *43 (M.D. PA August 31, 2016) noted *Teeter* plaintiffs sued under the federal Medicaid Act instead of the Eighth Amendment, so *Abu Jamal* cited it for an HCV healthcare analysis. Here, *Teeter's* approach to the necessity test applies.

The *Teeter* plaintiffs won class certification, despite defendant WHCA emphasizing a class action was unnecessary with a preliminary injunction in place:

> The WHCA refutes the notion that class certification would assist in enforcing the preliminary injunction, pointing out that it has already updated its HCV policy and begun complying with the Court's Order. … The WHCA further argues that notice is being provided by their website and that it "intends to notify all Medicaid recipients who were previously denied about the updated Treatment Policy." (Id. at 6.) These prudential concerns contribute to the appropriateness of class certification. In addition to the Rule 23 factors being met, the Court emphasizes the need to provide notice to class members and ensure enforcement of the preliminary injunction.

(Internal citations omitted.) *B.E. and A.R. et al v. Teeter*, 2016 U.S. Dist. Lexis 95548 at *12.

Here, even though Plaintiffs have yet to file a motion for injunctive relief (but will do so shortly), Defendant Cook's claim that a class is unnecessary still appears misplaced.

**A. Defendant Cook Cannot Meet the Second Prong of the *Galvan* Doctrine**

Defendant Cook has not agreed to withdraw the challenged CDOC HCV Policy G 2.04, although he maybe invites us to infer G 2.04 no longer applies because of Dr. Pillai's affidavit which says that he treated all five plaintiffs herein based on the August 2018 version of the Federal Bureau of Prisons ("BOP") Clinical Guidelines for evaluation and management of HCV. See Doc. 52-1, ¶¶16, 22, 31. Promising to institute a new policy based on a position that "there

seems to be developing some sort of consensus as to what an up-to-date 2019 prison policy might be to deal with the many issues related to Hep C," (Opposition, P3[2]) seems contrary to Dr. Pillai's sworn statement that the BOP Guidelines are the baseline for HCV in prison, and some developing consensus.

As Plaintiff Barfield first brought this claim July 18, 2018, Defendant Cook leaves us to speculate when CDOC started to use the August 2018 BOP guidelines. Dr. Pillai's affidavit openly admits to a remedial measure[3], seemingly an effort to moot these claims, which is the fourth prong of the *Galvan* test.

The First Circuit Court of Appeals[4] recognizes consent decrees, yet the Massachusetts HCV plaintiffs did not face a *Galvan* challenge. The Massachusetts Department of Correction defendants only three pages in objection to class certification. See *Fowler, et al v. Turco, et al,*

---

[2] Again, at p5, Defendant Cook characterizes this as "developing a modern, state-of-the-art clinical protocol and guidelines for screening, staging and treatment of Hepatitis C, which is the essence of the injunctive relief sought by the plaintiffs."

[3] Rule 407 of the Federal Rules of Evidence - Subsequent Remedial Measures: "When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
- negligence;
- culpable conduct;
- a defect in a product or its design; or
- a need for a warning or instruction.
But the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures."

[4] *Doe* v. *Gaughan*, 808 F.2d 871, footnote 1 (1st Cir. 1986) and also *Dionne v. Bouley*, 757 F.2d 1344,1355-56 (1st Cir. 1985)

**B. Defendant Cook Cannot Meet the Third Prong of the *Galvan* Doctrine Because Plaintiffs Seek Affirmative Relief in Addition to Injunctive Relief**

HCV Plaintiffs here overcome the *Galvan* Doctrine's third prong because HCV Plaintiffs seek affirmative steps beyond prospective injunctive relief. *Blecher,* in denying class certification to landlords challenging the administration of a rent control program*,* weighed all four *Galvan* factors and noted how *Jane B. v. New York City Department of Social Services*, 117 F.R.D. 64, 72 (S.D.N.Y. 1987) applied the third factor:

> where plaintiffs challenged the conditions in a juvenile detention facility, Judge Leisure concluded that *Galvan* was wholly inapplicable where plaintiffs sought relief that would require defendants to take affirmative steps to remedy existing unconstitutional conditions and implement standards that comported with federal and state laws and regulations. Judge Leisure believed *Galvan* should be limited to situations where plaintiffs sought merely prohibitive relief declaring a statute or administrative practice unconstitutional.

*Bleche*r, at *16-*17.

Based on *Blecher's* reading of Judge Leisure's use of the term "affirmative relief," here the HCV Plaintiffs prayer for relief disqualifies the consent decree concept *Galvan*. Plaintiff Barfield and his cohort want more than mere prohibitive relief declaring a statute or administrative practice unconstitutional. Part D of Plaintiffs' Prayer for Relief demands CDOC immediately identify all people in CDOC's custody who have HCV. This is affirmative step to remedy existing unconstitutional conditions (and perhaps why Defendant Cook did not elaborate on the third and fourth prongs of the *Galvan* test). Defendant Cook incorrectly relied

6

on *Gulino v. Board of Educ.,* 201 F.R.D. 326 (2001 S.D.N.Y.) to clarify *Galvan*.

*Gulino* weighs in favor of Plaintiffs' class certification as it acknowledges the inapplicability of *Galvan* in circumstances like this one. "Defendants here have offered no assurances that they would grant individual relief based upon the ruling in a single action. To the contrary, defendants have argued that the class definition is amorphous and overbroad. Thus, defendants are not committed to according all members of the proposed class relief based upon a single action." *Gulino*, 201 F.R.D. at 334. Defendant Cook also argued the class definition is overly broad. Opposition, P14.

"[T] he *Galvan* rule is narrow and only applies to those specific cases in which plaintiffs suing a governmental agency seek only prospective injunctive relief. … *Galvan* does not apply to situations in which plaintiffs seek not only injunctive and declaratory relief, but also affirmative relief and damages." (Internal citations and quotations omitted.) *Gulino*, 201 F.R.D. at 334.

Where denial of class certification will adversely affect Plaintiffs' ability to litigate a case effectively from discovery through enforcement, *Galvan* is also inapplicable. *Gulino*, 201 F.R.D. at 334. Defendant Cook has promised that class certification will make discovery unwieldly, but that is the only way Plaintiffs can determine all people who are HCV positive in CDOC custody. Just as Judge Constance Baker Motley granted class certification in *Gulino*, this Court should grant class certification to Plaintiffs Barfield, et al, because of the affirmative relief sought in the prayer for relief.

### C. Plaintiffs Overcome the Fourth Prong of the *Galvan* Doctrine, Mootness

Defendant Cook is not the first defendant to attempt to moot his way out of this class action, as the *Galvan* Doctrine holds: "[C]ourts also consider whether the claims raised by plaintiffs are likely to become moot, making class certification necessary to prevent the action from becoming moot." *Blecher*, at *14. Defendant Cook dedicates most of his Opposition to show CDOC has treated all the proposed class representatives, so their claims are moot.

"Article III of the Constitution limits federal 'judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980)(citing U.S. Const. art. III, § 2, cl. 1). Consequently, if a plaintiff does not have a personal stake in a live controversy, a federal court cannot adjudicate that plaintiff's claim. *See Geraghty*, 445 U.S. at 396-97. Ordinarily, a court must dismiss a claim that becomes moot during the course of litigation. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) ("If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." (citation and quotation marks omitted)).

Defendant Cook cited other Second Circuit precedent that "in general, if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot." *Comer v. Cisneros,* 37 F.3d 775, 798 (2d Cir. 1994)(*citing Board of Sch. Commissioners of Indianapolis v. Jacobs,* 420 U.S. 128, 129-30 (1975)(per curiam)).

However, Defendant Cook again did not indicate the several exceptions to this rule.  The Second Circuit has accepted and applied the exceptions laid out in *Comer;* "[f]urther, in accordance with established precedent, a class action will not be rendered moot after a named plaintiff has received relief prior to class certification where: (1) defendant voluntarily ceases the allegedly illegal conduct in an attempt to evade judicial scrutiny; (2) the claims are inherently transitory so that the court will not have enough time to rule on a motion for class certification before the representative's interest expires; or (3) the claims are capable of repetition, yet evading judicial review." *Id*, at 798-9. Plaintiffs meet all *Comer* factors.

Defendant Cook has voluntarily ceased - or in this case provided treatment - the allegedly illegal conduct in an attempt to evade judicial scrutiny. A review of this is intensely fact specific and requires a modicum of flexibility.  "The Second Circuit similarly has noted, as a general principle, the relevance of defendant's intent in mooting a claim prior to certification." *White* v. *OSI Collection Services*, 01-CV-1343 (ARR), 2001 U.S. Dist. LEXIS 19879 (E.D.N.Y. Nov. 5, 2001).

### A.   CDOC Treatment of Plaintiff Inmates Was a Concerted Effort to Moot the Claims

CDOC identified Mr. Barfield in its discovery as the "newspaper case," suggesting that the sole purpose behind his treatment was to avoid the publicity and lawsuit attached, or to treat him because he was now in the public eye. See Dr. Kim Statement, 51-1, ¶82.

The CDOC Hepatitis C Utilization Review Board minutes do not evaluate Mr. Barfield for

treatment until after this litigation was filed. *Id*. The HepCURB quickly moved Barfield into review and ultimately began treatment in October 2018. *Id.* Despite more than two years of requests for treatment, Plaintiff Barfield was miraculously treated within 3 months of this suit being filed.

Similarly, Plaintiffs Barberi and Davis have had HCV for many years (2004 and 2006 respectively), but neither were offered treatment until they began communicating with undersigned counsel and were interviewed as Plaintiffs in this case.

Plaintiff Tatem may be the most egregious example of the Defendant "picking off" the Plaintiffs in this case. Despite the numerous requests for treatment made by Plaintiff Tatem, and the Defendant's representation that Mr. Tatem is not even a candidate for treatment (forgetting for a moment that BOP Guidelines and the state of Connecticut's own Medicaid guidelines[5] call for all HCV positive patients to be treated), CDOC has generously treated him. This is a blatant attempt to moot this case and evade the judicial scrutiny that the Plaintiffs and the proposed class are entitled to.

> [C] lass claims may survive an otherwise mooting act of the defendant when there existed at the time of the filing of a motion for class certification or a class action complaint a live case or controversy. *See White*, 559 F.2d at 856-57; *German v. Federal Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1399 (S.D.N.Y. 1995). Because of the risk that would-be class representatives may be 'picked off' by a defendant before a class action can proceed, courts facing issues of mootness in the class action context may apply a more flexible approach. *See* generally *Crisci*, 169 F.R.D. at 567 (discussing flexible approach adopted by the Supreme Court in the context of class actions).

---

[5] See Dr. Kim Statement, ¶62.

*Encarnacion* v. *Barnhart*, 180 F. Supp. 2d 492, 498 (S.D.N.Y. 2002).

"Requiring multiple plaintiffs to bring separate actions, which effectively could be 'picked off' by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; moreover it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement." *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 339 (1980).

This is exactly the case here, and why Defendant Cook cannot surmount the fourth prong of the *Galvan* Doctrine. Undersigned counsel represents that he has been contacted by other inmates who could be named as class representatives as well, but as soon as attorney Krayeske or Attorney Ward will visit them in an attempt to sign them up, they will be treated and mooted. With at least 2,000 potential class members, this could be a never-ending cycle that is exactly what the Second Circuit has sought to avoid in its analysis and case holdings.

The mootness doctrine ensures that the litigant's interest exists "throughout the life of the lawsuit." *Comer v. Cisneros,* 37 F.3d 775, 798 (2d Cir. 1994). HCV is clearly an interest that will remain throughout the life of this lawsuit.

> Our decisions appear to recognize that where a defendant surrenders to 'complete relief' in satisfaction of a plaintiff's claims, the district court may enter default judgment against the defendant—even without the plaintiff's agreement thereto—and '[t]hen, after judgment is entered, the plaintiff's individual claims will become moot for purposes of Article III.' [citations omitted]. This resolution recognizes, in part, a district court's discretion to 'halt a lawsuit by entering judgment for the plaintiff when the defendant unconditionally surrenders and only the plaintiff's obstinacy or madness prevents [it] from accepting total

victory.' *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 85 (2013) (Kagan, J., dissenting); *see also McCauley v. Trans Union L.L.C.*, 402 F.3d 340, 342 (recognizing plaintiff "is not entitled to keep litigating [its] claim simply because [the defendant] has not admitted liability"). But, a district court may not take that approach unless the defendant surrenders to the 'complete relief' sought by the plaintiff, *Tanasi v. New Alliance Bank,* 786 F.3d 195, 200 (2d Cir. 2015)(emphasis added), and 'a judgment satisfying an individual claim does not give a plaintiff ... exercising [its] right to sue on behalf of other[s] ... 'all that [it] has ... requested in the complaint (i.e., relief for the class),' " *Genesis Healthcare*, 569 U.S. at 85, 133 S. Ct. 1523 (Kagan, J., dissenting) (*quoting Deposit Guaranty Nat. Bank v. Roper*, 445 U.S. 326, 341 (1980) (Rehnquist, J., concurring) ); *see Chen v. Allstate Ins.* Co., 819 F.3d 1136, 1147 (2d Cir. 2016) (noting previous Supreme Court decisions' observation that a named plaintiff retains a "personal stake in obtaining class certification")."

*Radha Geismann, M.D., P.C. v. ZocDoc, Inc.*, 909 F.3d 534, 542-43 (2d Cir. 2018), *cert. denied sub nom*. *ZocDoc, Inc. v. Geismann*, 139 S. Ct. 1605 (2019).

In *Radha Geismann,* the Second Circuit has placed a spotlight on the principles underlying *Roper* to create a new kind of safe haven for plaintiffs who are plainly seeking relief beyond their individual circumstances.  Applying these principles, the Second Circuit infers that the plaintiff's rejection of the Rule 68 offer establishes that the lawsuit "is about more than the statutory damages to which it believes it is entitled; it is also about the additional reward that it hopes to earn by serving as the lead plaintiff for a class action.'" *Radha Geismann*, 909 F.3d at 543 (quoting *Fulton Dental, LLC v. Bisco, Inc.*, 860 F.3d 541, 545 (7th Cir. 2017)).

On the basis of this inference, the Second Circuit concluded "the district court must resolve the pending motion for class certification before entering judgment and declaring an action moot based solely on relief provided to a plaintiff on an individual basis." *Id.*  Thus Plaintiffs' Motion for Class Certification cannot be mooted out of existence.

Additionally, the individual Plaintiffs are being treated or have been treated, the CDOC has demonstrated a long history of healthcare issues for inmates. Counsel for the named Plaintiffs personally have six other pending lawsuits regarding poor healthcare provided by the CDOC in addition to two cases settled between the State and Plaintiffs represented by the same Counsel.

The Plaintiffs claims should relate back to the date of the original complaint, allowing the current Plaintiffs and proposed class representatives to remain in the case. "The Circuit related the class certification back to the date of the filing of the motion to certify because 'refusing to do so would mean that the SSA could avoid judicial scrutiny of its procedures by the simple expedient of granting hearings to plaintiffs who seek, but have not yet obtained, class certification.' *See also Trautz v. Weisman*, 846 F. Supp. 1160, 1164 (S.D.N.Y. 1994) (citing to *White* for the proposition that "the Second Circuit has also recognized an exception where a defendant can purposefully moot a named representative's claim prior to certification."). *See also Mathis v. Bess*, 692 F. Supp. 248, 258 (S.D.N.Y. 1988) ("Of particular interest is whether the defendant could purposefully moot the plaintiff's claim subsequent to the class action complaint being filed, or the claim is so transitory in nature that the district court cannot reasonably be expected to rule on the motion for class certification before the expiration of the named plaintiff's claim.") (internal citations omitted); *Bacon v. Toia*, 437 F. Supp. 1371, 1383 (S.D.N.Y. 1977) (finding that circumstances of the case merited relating class certification back

to the filing of the complaint because "the mootness could be 'created by the action of the defendant who could agree to the payment of (the benefits sought by the plaintiff) every time an action is instituted'") (quoting *Lugo v. Dumpson*, 390 F. Supp. 379, 381 (S.D.N.Y. 1975)).  This is squarely on point to the current case.

The alleged mootness or conflict between the named Plaintiffs as class representatives and the proposed class has been created by the Defendant and is likely to be repeated in the event of either an amended Complaint with new Plaintiffs here or entirely new cases.

When weighing all four prongs of the Galvan Doctrine, a consent decree is not an appropriate way to resolve the claims of the Plaintiffs, and class certification should be granted.


II.      **Plaintiffs Have A Right to Class Certification As Defendant Cook's Assurances of Applying An Individual Ruling to the Whole Class are Insufficient**

A proposed class representative has a right to have certification if the requirements of the Rules are met. *Geraghty*, 445 U.S. at 403.

> [T]he fact that a named plaintiff's substantive claims are mooted due to an occurrence other than a judgment on the merits does not mean that all the other issues in the case are mooted. A plaintiff who brings a class action presents two separate issues for judicial resolution. One is the claim on the merits; the other is the claim that he is entitled to represent a class. The denial of class certification stands as an adjudication of one of the issues litigated, We think that in determining whether the plaintiff may continue to press the class certification claim, after the claim on the merits expires, we must look to the nature of the personal stake in the class certification claim.

(Internal citations and quotations omitted). *Id.* at 402.

This right to class certification is "more analogous to the private attorney general

concept than to the type of interest traditionally thought to satisfy the personal stake requirement." (Internal citations and quotations omitted). *Id*. at 403. The Supreme Court limited *Geraghty* to the appeal of the denial of the class certification motion (*Id*. at 404), so it sits in a slightly different posture.

*Matyasovszky v. Hous. Auth. Of Bridgeport*, 226 F.R.D. 35 (2005) cited cases showing class certification is appropriate when a defendant's assurances are inadequate, ie *McCoy v. Ithaca Housing Authority*, 559 F.Supp. 1351, 1354 (N.D.N.Y. 1983) and *Mayer v. Wing*, 922 F.Supp. 902, 908 (S.D.N.Y. 1996).

*Matyasovszky's* rejected the *Galvan* Doctrine because the defendant Bridgeport Housing Authority was unable to regulate its conduct to insure compliance with federal law, "this Court finds little reassurance that a judgment in an individual action would inure to the benefit of all class members." *Matyasovszky*, 226 F.R.D. at 43.

While Defendant Cook can claim a consent decree would protect all class members, Defendant Cook refuses to identify class members and is not even in accordance with state law on actions that would help identify class members. Connecticut General Statutes §19a-7o(b), Hepatitis C testing states:

> On and after October 1, 2014, a primary care provider *shall* offer to provide to, or order for, each patient who was born between 1945 to 1965, inclusive, a hepatitis C screening test or hepatitis C diagnostic test at the time the primary care provider provides services to such patient, except a primary care provider is not required to offer to provide to, or order for, such patient a hepatitis C screening test or hepatitis C diagnostic test when the primary care provider reasonably believes: (1) Such patient is being treated for a life-threatening emergency; (2) such patient has previously been offered or has received a

hepatitis C screening test; or (3) such patient lacks the capacity to consent to a hepatitis C screening test. (emphasis added)

This law, passed in 2014, requires opt-out testing of all patients born between 1945 and 1965, inclusive. The CT DPH, if it had jurisdiction, could arguably shut CDOC down as a medical health provider. The state is not overseeing itself.

As pled, Defendant Cook (and Semple, as the former Commissioner of the CDOC) is the primary health care provider for the proposed class. ("See Conn. Gen. Stat. §§ 18-81 et seq., which designates the Commissioner of the DOC with responsibility to oversee all aspects of service to inmates in DOC custody, including healthcare." See Doc. 35, ¶19). In the five years since the passage of C.G.S. §19a-7o, the CDOC has never been in compliance. This Court, then, should find little reassurance that a judgment in Plaintiff Barfield's favor would inure to the benefit of all class members, who the CDOC refuses to identify.

Class certification, as a tool, would force CDOC to determine class membership.

Defendant Cook deposed the Plaintiffs expert Dr. Arthur Kim Friday, June 14, 2019. Forced to wear the hypothetical hat of a prison medical director, Dr. Kim testified[6] that the first thing he would do was obtain a census of inmates who had HCV. The Opposition claims repeatedly the medical experts in this case will likely agree. Opposition, P6. Opt-out testing is also the standard of care for HCV according to the BOP Guidelines. See Doc. 51-1, ¶33, and Doc. 52-1, Exhibit A.

_____

[6] Plaintiffs will provide the Court with the relevant portions of this transcript when the court reporter delivers it after 10 business days of June 14, 2019.

When presented the opportunity to fund testing for all inmates during the 2019 legislative session, Defendant Cook failed to take a position on HB 6546, An Act Requiring a Study of the Prevalence of the Hepatitis C Virus in Correctional Institutions and Facilities. Plaintiffs submitted this bill as Exhibit 8 in their Supplemental Memorandum (Doc. 51-8).

When an opportunity arose to earmark more than $400,000 through the Connecticut General Assembly to test all inmates for HCV, Defendant Cook's CDOC remained silent, as emails from the chief epidemiologist and the legislative liaison with the Connecticut Department of Public Health (DPH) show. A true and correct copy of these emails, authenticated by CT DPH chief epidemiologist Matthew Cartter are attached as Exhibit 15.

In basketball terms, this should have been a lay-up for Defendant Cook. Instead, Dr. Raul Pino, then the Commissioner of the DPH, submitted testimony to the Public Health Committee of the General Assembly that mirrored the BOP's guidelines, and Defendant Cook remained on the sidelines. A true and correct copy of Dr. Pino's testimony is included as part of Exhibit 16.

If the CDOC had fully adopted BOP guidelines, as Dr. Pillai's affidavit invited us to infer, then CDOC would have lobbied for funding for opt-out testing and a census of all prisoners who are HCV positive. To Plaintiffs like Mr. Barfield who were ignored for years, told "treatment is not required at this time – he doesn't grasp the concept" and only received DAAs by starting this litigation, Defendant Cook's position on HB6546 demonstrates the hollow nature of a consent decree.

Nor is this the first time the CDOC has refused outside money and assistance to perform

a census of all inmates for HCV. See Corrected First Amended Complaint, ¶¶52-54.  A letter from Commissioner Semple dated February 17, 2017 produced in discovery confirms that the CDOC stopped the Gilead study in its tracks. A true and correct copy of this letter is attached herein as Exhibit 17.

If the Florida Department of Correction had a long and sordid history[7] with HCV, the CDOC is not far behind, if not worse.


### III.       A Class Can Be Defined to Encompass Connecticut's Unified Jail/Prison System

Plaintiffs have maintained a consistent class definition that was admittedly based on a geographical affinity to an already certified class in Massachusetts. Defendant Cook presents concerns about the class definition not being flexible enough to deal with Connecticut's unified system with integrated jail and prison functions.  While Plaintiffs do not consider the Massachusetts definition is wholly inapplicable to Connecticut, Plaintiffs understand that there could be class members who might never receive treatment because of short stays.

Of the six states that have integrated systems (Alaska, Connecticut, Delaware, Hawaii, Rhode Island and Vermont), Vermont is the only other state with a pending HCV class action. See *West v. Gobeille, et al*, 2:19-cv-0081-wks. This case, filed May 21, 2019 in the United States District Court for the District of Vermont, proposed a class definition tailored to a unified system:

---
[7] Plaintiffs' Notice of Supplemental Authority (doc. no. 47).

i. Who are, or will be, in the legal custody of the Vermont Department of Corrections regardless of facility location; and

ii. Who have been incarcerated for at least 14 days or who have completed their Initial Healthcare Receiving Screening, whichever occurs first; and

iii. Who have been diagnosed with a chronic HCV, and are candidates for DAA treatment as per the standard of care; and

iv. For whom DAA treatment has been or will be denied or withheld based on considerations that deviate from the medical standard of care, including, but not limited to: time left before release from DOC custody or indefinite release date, a disciplinary record, a history of substance abuse or mental health issues, the acquisition of tattoos while incarcerated, disease severity considerations, or other unnecessary treatment criteria.

See Motion for Class Certification, *West v. Gobeille, et al*, 2:19-cv-0081-wks, Doc. 2, May 21, 2019.

Understanding the parties herein have already briefed the Plaintiffs' proposed class definition, Plaintiffs are loathe to change the definition now. At the same time, Plaintiffs grasp the concerns presented about constructing a class definition that does not account for the short stays in a unified system, and Plaintiffs endeavor to be flexible with their proposed class definition. This Court, when ruling on class certification, has the discretion to fashion a class definition suited to this case. Plaintiffs expect that since they have referred to the growing body of national HCV case law, the Vermont litigants will look at Connecticut because it too is in the Second Circuit and it is a unified system.

Section ii of the proposed Vermont definition provides one manner for dealing with the unified system, which indicates that someone needs to be in DOC custody for 14 days. Vermont is not a complete analogue because Vermont outsources its medical functions to a corporation,

which has set its own guidelines. *West's* complaint alleges that unsentenced detainees are excluded from HCV care. According to the contractor's guidelines, "In order to be eligible for treatment, the individual needed to be a sentenced inmate with greater than one year of time remaining before release." See Complaint, ¶93, see also ¶86, *West v. Gobeille, et al*, 2:19-cv-0081-wks, Doc. 1, May 21, 2019.

In Connecticut, the policy towards unsentenced detainees is not as specifically identified as what was pled in Vermont. However, as Mr. Knapp's situation showed, he did not receive any HCV-related care until he was sentenced and a plaintiff and proposed class representative.

In Tennessee, which does not present a unified jail/prison system, the class definition approved by the Middle District of Tennessee on May 4, 2017 included duration of stay:

> All persons currently incarcerated in any facility under the supervision or control of the Tennessee Department of Corrections or persons incarcerated in a public or privately owned facility for whom the Tennessee Department of Corrections has ultimate responsibility for their medical care and who have at least 90 days or more remaining to serve on their sentences and are either currently diagnosed with Hepatitis C infection or are determined to have Hepatitis C after a screening test has been administered by the Department of Corrections.

*Graham v. Parker*, 2017 U.S. Dist. Lexis 68265 at *17.

A class definition could combine contours like 90 days remaining in custody and a 14-day minimum stay to alleviate CDOC's concerns about short-term jail stays for unsentenced detainees. CDOC could argue minimum stay language could cause confusion with unsentenced detainees whose minimum stay is unknowable because of uncertainty with their bond situation, or the actual disposition of their case.

Section iv of Vermont's definition attempts to address that concern by eliminating indefinite release date as a criteria upon which treatment is denied. However, CDOC has never explicitly said in the manner that Vermont officials have that CDOC denies care to prisoners based on release date. Plaintiffs here may attempt to draw such inferences. Yet the Vermont language provides a class definition in a unified system if this Court finds the Massachusetts definition is unworkable.

In deciding class certification, the Tennessee court noted in Footnote 4 of its class certification ruling that arguments about why medication is not always required for the treatment of HCV and that HCV does not require treatment in all cases are merits issues, not issues for determining class certification. *Graham*, 2017 U.S. Dist. Lexis 68265 at FN4. The Tennessee Department of Correction made similar arguments as the CDOC here, which the court there rejected:

> Defendants argue that Plaintiffs' proposed class definition is not sufficiently definite. Defendants state that because the "fluidity" of the class (all current inmates), determination of who belongs in the class would require individualized, continuous calculation. Defendants overlook that Plaintiffs are seeking injunctive relief only. That injunctive relief, if obtained, would affect all current and future inmates with Hepatitis C, with no need to make individualized determinations.  Moreover, the Court notes that class certification of this action, especially if the class is "fluid," will insure against the danger of the action becoming moot. See, e.g., Reynolds v. Giuliani, 118 F.Supp.2d 352 at 391-92 (S.D. N.Y. 2000) (involved a fluid class where claims of named plaintiffs could become moot prior to completion of the litigation).

*Graham*, 2017 U.S. Dist. Lexis 68265 at *5 -*6.

### IV.    Plaintiffs Knapp and Tatem Enjoy Vicarious Administrative Exhaustion

The doctrine of vicarious exhaustion in class actions dissolves the CDOC's argument

relating to Mr. Knapp and Mr. Tatem's failure to exhaust their administrative remedies.

> [A] class of prisoner-plaintiffs certified under Rule 23(b)(2) satisfies the PLRA's administrative exhaustion requirement through 'vicarious exhaustion,' i.e., when one or more class members ha[s] exhausted his administrative remedies with respect to each class claim raised by the class" (alteration in original) (internal quotation marks and citation omitted)); *Gates v. Cook*, 376 F.3d 323, 330 (5th Cir. 2004) (stating that one class member's exhaustion "is enough to satisfy [the PLRA's exhaustion] requirement for the class"); *Jackson v. Dist. of Columbia*, 254 F.3d 262, 269, 349 U.S. App. D.C. 185 (D.C. Cir. 2001) (explaining that so long as one member of the prisoner-class pursued the available administrative remedies, "the plaintiff class has met the filing prerequisite" (quoting *Foster v. Gueory*, 655 F.2d 1319, 1321-22, 211 U.S. App. D.C. 89 (D.C. Cir. 1981); see also *In re Nassau Cnty. Strip Search Cases*, No. 99-CV-2844, 2010 U.S. Dist. LEXIS 99783, 2010 WL 3781563, at *8 (E.D.N.Y. Sept. 22, 2010) ("[G]iven that exhaustion allows prison officials an opportunity to address the merits of a claim and that requiring all class members to exhaust could unduly burden a complaint system, tethering exhaustion to named plaintiffs makes sense."); cf. U.S. ex rel. *Sero v. Preiser*, 506 F.2d 1115, 1130 (2d Cir. 1974) (finding that a class of prisoners seeking habeas corpus relief pursuant to 28 U.S.C. § 2254 satisfied the exhaustion requirement through vicarious exhaustion). Therefore, the Court finds that whether the purported class members have exhausted their administrative remedies is irrelevant to the class certification analysis.

*Butler v. Suffolk County*, 289 F.R.D. 80, 97 (S.D.N.Y. 2013).

The Pennsylvania HCV class action recognized vicarious exhaustion as well:

> The United States Court of Appeals for the Third Circuit has not yet addressed "vicarious exhaustion," but other courts have permitted it in § 1983 class actions filed by inmates. See *Hubbard v. Danberg*, Civ. A. No. 07-745-GMS, 2010 WL 883776, at *6 n.9 (D. Del. Mar. 10, 2010) (citing Chandler, 379 F.3d 1278; and *Meisberger v. Donahue*, 245 F.R.D. 627 (S.D. Ind. 2007) (additional citation omitted)), aff'd, 408 F. App'x 553 (3d Cir. 2010). For example, the United States Court of Appeals for the Fifth Circuit, like the Eleventh Circuit, has determined that the exhaustion of administrative remedies by one class member is sufficient

to satisfy the PLRA's exhaustion requirement for the entire class. See *Gates v. Cook*, 376 F.3d 323, 330 (5th Cir. 2004) (concluding that one plaintiff's satisfaction of the Mississippi Department of Corrections' Administrative Remedy Program was "enough to satisfy the requirement for the class" (citations omitted)). District Courts in other Circuits have also held that "the PLRA's exhaustion requirement is limited to the class representatives." *Decoteau v. Raemisch*, 304 F.R.D. 683, 687 (D. Col. 2014) (citing *Chandler [v. Crosby]*, 379 F.3d [1278] at 1287; *Gates*, 376 F.3d at 330; and *Jackson v. District of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001)); see also *Butler v. Suffolk Cty.*, 289 F.R.D. 80, 97 (E.D.N.Y. 2013) (finding that "whether the purported class members have exhausted their administrative remedies is irrelevant to the class certification analysis" where the class representatives have satisfied the PLRA exhaustion requirement); *Scott v. Clarke*, 64 F. Supp. 3d 813, 832 n.10 (W.D. Va. 2014) (concluding that the efforts of the named plaintiffs and several other class members, who fully exhausted their prison medical grievances, "easily support[ed] a finding of PLRA exhaustion on behalf of the entire class").

We agree with the Eleventh Circuit's reasoning in *Chandler* and we conclude that, if any of the named Plaintiffs, Chimenti, Leyva, and Maldonado, have satisfied the PLRA's administrative exhaustion requirement, the exhaustion requirement is satisfied for all of the absent class members through vicarious exhaustion. See *Chandler*, 379 F.3d at 1287.

*Chimenti v. Wetzel*, 2018 U.S. Dist. Lexis 87635, *11-*13 (E.D.PA. May 24, 2018).

Therefore, Plaintiffs submit that the CDOC's argument about any of the putative class representatives failure to exhaust is inapposite, and class certification should be granted.

### V.    Plaintiffs and their Counsel Surmount the Adequacy Hurdle

The Opposition did not question the adequacy of Plaintiffs' counsel, but undersigned is compelled to indicate to the Court that since the filing of the Supplemental Memorandum, the Impact Fund of Berkeley, California awarded undersigned counsel a $35,000.00 grant to help fund this litigation. Worth noting in the article published by the Connecticut Law Tribune on

law.com[8] is that CDOC's spokesman Andrius Banevicius said he was not aware of any current department initiatives to address hepatitis C infection in state prisons.

This is the heart of the issue. Prior to a CDOC spokesman commenting on pending litigation, one would suspect they did their homework. The same CDOC that treated Mr. Barfield because of him being in the newspaper now has a spokesman unaware of any initiatives surrounding a lawsuit that could cost the state, by its own estimates, $150 million. Yet CDOC says to this Court, trust us, we got this. CDOC does not have this under control.

## VI.    Conclusion

No arguments presented by Defendant Cook in his Opposition are sufficient to prevent class certification. Therefore, certification of the claims for relief would achieve economies of time, effort, and expense for all parties to this litigation. The Plaintiffs motion for class certification under Rules 23(a) and 23(b) should be granted.

---

[8] Michael Marciano, "Impact Fund Grant Goes to Hartford Attorneys for Hep-C Battle", https://www.law.com/ctlawtribune/2019/06/11/impact-fund-grant-goes-to-hartford-attorneys-for-hep-c-battle/?fbclid=IwAR3EzzHArxlJo42s4lpz13ACSYHhXq3WCLiFy7EGK8SqzyMZRAduhhYkHBA , last checked June 18, 2019. A true and correct copy of this article is attached as Exhibit 18.

PLAINTIFFS,
ROBERT BARFIELD et al

_____/s/Kenneth J. Krayeske_____
Kenneth J. Krayeske, Esq.

Counsel for Robert Barfield
Kenneth J. Krayeske Law Offices
255 Main Street, 5th Floor
(860) 969-4911
    FAX: (860) 760-6590
eMail: [attorney@kenkrayeske.com](mailto:attorney@kenkrayeske.com)
Federal Bar # CT28498


_/s/ DeVaughn L. Ward_____
DeVaughn L. Ward, Esq.
Ward Law LLC
363 Main Street, 4th floor
Hartford, CT 06106
860-869-4086
Fax: 860-471-8406
Email: dward@attyward.com
Fed Bar No. ct30321



**CERTIFICATE OF SERVICE**

I hereby CERTIFY that on June 20, 2019, a copy of the foregoing Plaintiffs' Reply to Opposition For Motion For Class Certification was electronically filed and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operations of the Court's electronic filing system or by mail to anyone unable to access the Court's electronic filing system as listed below. Parties may access this filing through the Court's CM/ECF System.


_____/s/ Kenneth J. Krayeske_____
Kenneth J. Krayeske, Esq.