UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT BARFIELD, et al. | : | 3:18-CV-1198(MPS) |
|  Plaintiffs, | : | |
| | : | |
|  v. | : | |
| | : | |
| ANGEL QUIROS, | : | |
| Defendant, in his official capacity as | : | |
| Commissioner, Connecticut | : | |
| Department of Correction | : | MARCH 11, 2022 |

**PROPOSED SUPERSEDING SETTLEMENT AGREEMENT AND RELEASE**

**I.      RECITALS**

WHEREAS, the plaintiff ROBERT BARFIELD, commenced this action on July 19, 2018, against then-Department of Correction Commissioner Scott Semple, in his official capacity, alleging that the Department of Correction failed to provide proper treatment for inmates infected with the Hepatitis C Virus (HCV); and

WHEREAS, on November 20, 2018, the plaintiff filed an amended complaint and a motion for joinder seeking to add Commissioner Semple as a defendant in his individual capacity and to add Jason Barbieri, John Knapp, Curtis Davis and Darnell Tatem as plaintiffs; and

WHEREAS, the Court granted the plaintiffs' motions to amend and add parties on December 18, 2018; and

WHEREAS, on December 20, 2018 the plaintiffs filed a motion to certify a class defined as "all people who are or will be prisoners in the custody of the Connecticut Department of Correction ("DOC"), and who have or will have Hepatitis C while in custody and have not yet been cured."  The motion for class certification further represented that the proposed class "satisfies the prerequisites of Rule 23(a) and (b)" of the Federal Rules of Civil Procedure; and

WHEREAS, on August 6, 2019, the Court dismissed, among other things, all money damages claims from the case and certified a Rule 23(b)(2) class defined as "All sentenced persons (1) who have been or will be diagnosed with chronic Hepatitis C; (2) who are or will be in the custody of the Connecticut Department of Corrections; and (3) who have at least sixteen weeks remaining on their sentences."  The Court further appointed Robert Barfield, John Knapp, Jason Barbieri and Darnell Tatem as class representatives; and

WHEREAS, on August 6, 2019, the same day the court certified a class in this action, the Department of Correction adopted Administrative Directive 8.18 (appended hereto as Ex. 1) which fully complies with contemporary medical standards for the care and treatment of HCV; and

WHEREAS, the parties thereafter engaged in lengthy settlement discussions under the supervision of The Honorable Sarah A.L. Merriam, resulting in a settlement agreement; and

WHEREAS, on April 1, 2020, the parties filed their proposed settlement agreement with the court, indicating that the agreement was subject to approval of the Connecticut General Assembly, pursuant to Conn. Gen. Stat. §3-125a.  In summary, that agreement provided as follows:

1. A class defined as "All inmates, both sentenced and unsentenced, who were, are, or will be confined in a Connecticut Department of Correction facility, since the filing of this complaint until June 30, 2021";
2. Screening for HCV infection to all inmates and provide DAAs to inmates pursuant to the guidelines in the FBOP Clinical Guidance, consistent with A.D. 8.18;.
3. Providing to Plaintiffs' counsel with reports on a quarterly basis regarding the number of inmates tested, staged and treated, and inmates who rejected testing and treatment.
4. Payment of $110,000.00 in attorneys' fees and costs to class counsel;
5. A release of liability on behalf of the named plaintiff and all class members, barring money damages suits for any delay in HCV treatment;
6. Notice of the settlement to be provided to the entire inmate population, and copies of the agreement will be made available upon request; and
7. A provision that the settlement agreement expires on July 1, 2021; and

WHEREAS, thereafter, the Covid-19 pandemic suspended the then-open session of the Connecticut General Assembly, resulting in delay of approval until the 2021 legislative session; and

WHEREAS, on November 6, 2020, to accommodate for the delay in legislative approval as described above, the parties amended the agreement to enlarge the time period of the agreement for class members from June 30, 2021 to March 1, 2022; and

WHEREAS, the legislature approved the settlement agreement; and

WHEREAS, on November 6, 2020, the parties filed a proposed amended settlement agreement on the docket and a motion to amend the class definition to include all inmates, both sentenced and unsentenced, who were, are, or will be confined in a Connecticut Department of Correction facility, since the filing of this complaint until March 1, 2022; and

WHEREAS, the Court granted the parties' stipulation to amend the class definition on November 16, 2020; and

WHEREAS, the Court approved the parties' proposed notice to the class on March 2, 2021; and

WHEREAS, the Court scheduled and held a fairness hearing on May 17, 2021, and denied the motion to approve the settlement, without prejudice; and

WHEREAS, any further amendment expanding the scope or duration of the agreement

would require the defendant to return to the legislature for approval, which is not possible prior to the March 1, 2022 automatic termination date of this agreement; and

WHEREAS, despite the delay and other emergency management protocols occasioned by the pandemic and the court's denial of the joint motion to approve the settlement agreement, the State has performed and continues to perform substantially all of the terms of the settlement agreement save for the payment of attorneys' fees to plaintiffs' counsel, which effectively has rendered the claims in this case moot. The defendant's compliance includes, as of December 31, 2021, but is not limited to:

1. From the adoption of A.D. 8.18 on August 6, 2019 to December 31, 2021, DOC has tested 18,752 inmates for HCV;
2. During that same period, 1,856 inmates have tested positive for HCV, and 866 inmates have taken or are currently taking treatment;
3. The DOC has filed quarterly reports on the docket and with plaintiffs' counsel as required by the agreement, despite there being no operative settlement agreement; and
4. DOC has continued to adhere to the requirements of A.D. 8.18, despite there being no operative settlement agreement; and

WHEREAS, on February 23, 2022, the Court granted the parties' motion to amend the class definition with the class now defined as:

"All inmates, both sentenced and unsentenced, who were, are, or will be confined in a Connecticut Department of Correction facility, since the filing of this complaint until August 1, 2022."

NOW THEREFORE, in consideration of the above recitals as well as other good and valuable consideration as set forth herein, the parties hereby stipulate as follows:

## AGREEMENT

**A.   The Named Plaintiffs' Obligations**

1.   Named plaintiffs Robert Barfield, John Knapp, Jason Barberi, and Darnell Tatem, individually, or if unavailable, their counsel on their behalf, will:

(a) execute a general release of the individual claims, including any and all money damages claims, of the named plaintiffs, Robert Barfield, John Knapp, Jason Barberi, Darnell Tatem;

(b). Plaintiffs and class counsel will execute a class-wide release on behalf of the certified class for any and all claims for declaratory and injunctive relief; and

(c). On August 1, 2022, Plaintiffs will file on the docket a joint stipulation of dismissal on behalf of the entire class, with prejudice and without an award of costs or fees, pursuant to Fed. R. Civ. P. 41(a)(1).

### B. The State's Obligations

2. The State will pay to counsel for the plaintiff class the sum of $112,500 in fees and costs, all in full and final settlement of this action. In order to receive this sum, plaintiffs' counsel must submit W-9 form(s) to Defendant's counsel.

3. The defendant will maintain DOC Administrative Directive 8.18, "Hepatitis C Virus" (appended hereto and incorporated by reference herein) without revision until August 1, 2022, the date on which any and all of the state's obligations, including having to notify plaintiffs of changes in the HCV policy will end.

4. The DOC will continue to submit to this Court, in a docketed filing, and has so filed since December 31, 2020, a report detailing the criteria below. The DOC will electronically file an updated report with this court every 90 days through August 1, 2022. The electronically filed reports shall include the following information:

   1. The inmate census for the last day of that period.
   2. The number of inmates tested for Hepatitis C Virus (HCV) since August 6, 2019.
   3. The number of inmates who cumulatively tested positive for HCV that period, to include:
      a. The number of inmates who have refused testing for HCV
      b. The number of inmates deemed ineligible for treatment for HCV
      c. The cumulative total number of inmates taking or who have taken Direct Acting Antiviral (DAA) medications for the treatment of chronic HCV infection.

4

**C. Dispute Resolution**

5. Plaintiffs' Counsel and DOC agree to attempt an informal and private dispute resolution mediation with a United States District Judge or United States Magistrate Judge, assigned by the Court, in the Court's discretion to be the "Settlement Judge" to resolve any disputes that may arise arising under this Agreement.

6. If, while this Settlement Agreement is in effect, Plaintiffs' Counsel have reasonable grounds to believe that the DOC, based on a systemic pattern or practice of non-compliance, has failed to file the reports required in paragraph 4 above, or if DOC proposes or enacts revisions or changes to the Hepatitis C Protocol (A.D. 8.18) that are materially inconsistent with the Settlement Agreement and the clinical guidelines incorporated into A.D. 8.18, and to the detriment of the plaintiffs, Plaintiffs' Counsel will provide the DOC with a written detailed notice of alleged noncompliance, setting forth the factual basis for such claim. This notice will identify, with particularity, the basis of the claim that the DOC is not in compliance, why such facts constitute a systemic pattern or practice of non-compliance, and the specific material provision of the Settlement Agreement or Hepatitis C Protocol that is implicated.

7. Within thirty (30) days of receipt of the notification, the DOC shall provide a good faith written response to the Plaintiffs' notification with a full factual explanation as to why the DOC believes it is in compliance with the specified material provisions, an explanation of the DOC's plans to achieve full compliance with the specified material provisions, or an explanation of the bona fide medical, security, or other reasons for the alleged non-compliance.

8. It is understood between the parties that certain unforeseeable events or conditions, including but not limited to, long-term lockdowns in the DOC, changes to established treatment

practices or the guidelines of the Federal Bureau of Prisons regarding medical treatment for persons with Chronic Hepatitis C, or changes in FDA regulations, may prevent compliance with this Agreement. If so, the DOC shall notify Plaintiffs' counsel of the event or condition and the parties shall enter into good-faith discussions to resolve the issues.

9. If the parties are unable to resolve the dispute within thirty (30) days of DOC's response, the parties shall notify the Settlement Judge. The Settlement Judge may, in the Court's discretion, establish such mediation procedures the Court deems appropriate. Plaintiffs' Counsel may seek intervention from the Court, but only after all efforts for resolving the dispute with the assistance of the Settlement Judge have been unsuccessful, by filing a motion for specific performance of the material provision identified through the aforementioned Dispute Resolution procedure. The Court, after appropriate notice, filing of moving and opposing papers, evidence and an evidentiary hearing, may order specific performance of the material provision upon a showing that the DOC is in substantial and systemic non-compliance with the material provision specified in the notice.

10. The Plaintiffs agree they shall not file a motion for contempt. The Court may not entertain a motion for contempt and the Court may not grant any remedial relief in the nature of a contempt of court finding against the DOC. The sole remedy shall be, if Plaintiffs prevail on their claim of non-compliance, specific performance of this Agreement.

11. The Plaintiffs agree not to seek any attorneys' fees and/or costs for any time spent in any portion of dispute resolution, including, but not limited to, the drafting and sending of the notice of noncompliance, reviewing DOC's response, dispute resolution with the Settlement Judge, or any motion filed with the court for specific performance of the Agreement.

**D. Best Efforts and Good Faith**

12. The Parties hereby agree to use their best efforts and good faith in carrying out all the terms of this Agreement. All of the Parties hereby agree and, where appropriate, authorize their respective counsel to execute any additional documents and take any similar procedural actions which reasonably may be required in order to effectuate the Agreement or otherwise to fulfill the intent of the Parties hereunder. Counsel for the parties have authority to enter into and sign this Agreement.

**E. Release**

13. The named Plaintiffs, Robert Barfield, John Knapp, Jason Barberi, and Darnell Tatem individually, or counsel with the individual plaintiffs' consent and on their behalf, hereby execute the following General Release:

The plaintiffs, ROBERT BARFIELD, JOHN KNAPP, JASON BARBERI, AND DARNELL TATEM individually and on behalf of their heirs, beneficiaries, successors and assigns, for and in consideration of the payment of the proceeds of this settlement, and other valuable considerations, the receipt of which is hereby acknowledged, do herewith release and forever discharge the defendant, ANGEL QUIROS Commissioner of the Department of Correction, the State of Connecticut, all agencies of the State of Connecticut all present and former officers, employees and agents of the State of Connecticut, (including all current and former employees and contractors of the State of Connecticut, Department of Correction and the University of Connecticut Health Center, and Correctional Managed Health Care), in both their official and individual capacities, their heirs, successors and assigns, from all actions, causes of action, suits, claims, controversies, damages and demands of every nature and kind, including attorneys' fees and costs, monetary and equitable relief, which the plaintiffs, their heirs, successors and assigns ever had, now have or hereafter can, shall or may have for, upon,

or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date this Release is signed including but not limited to acts arising out of, or in any way related to the incidents or circumstances which formed the basis for the above-captioned lawsuit, including such actions as may have been or may in the future be brought in the federal courts, the courts of the State of Connecticut, any state or federal administrative agency or before the Claims Commissioner pursuant to Conn. Gen. Stat.§ 4-141, et seq.

Furthermore, the Plaintiffs, and their counsel, on behalf of the class, hereby execute the following Class Release, as to any and all claims of non-monetary relief, including claims for injunctive and/or declaratory relief, and any and all claims for relief which were raised or could have been raised as a class certified under Rule 23 (b)(2) of the Federal Rules of Civil Procedure :

The plaintiffs, ROBERT BARFIELD, JASON BARBIERI, JOHN KNAPP AND DARNELL TATEM, on behalf of the class, their heirs, beneficiaries, successors and assigns, for and in consideration of the terms of this settlement, and other valuable considerations, the receipt of which is hereby acknowledged, do herewith release and discharge the defendant, Angel Quiros, Commissioner of the Department of Correction, the State of Connecticut, all agencies of the State of Connecticut all present and former officers, employees and agents of the State of Connecticut, (including all current and former employees of the State of Connecticut, Department of Correction and the University of Connecticut Health Center, and Correctional Managed Health Care), in both their official and individual capacities, their heirs, successors and assigns, from any and all claims of non-monetary relief, including claims for injunctive and/or declaratory relief, and any and all claims for relief which were raised or could have been raised as a class certified under Rule 23 (b)(2) of the Federal Rules of Civil Procedure, which the plaintiffs, their heirs, successors and assigns ever had, now have or hereafter can,

shall or may have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date this Release is signed, limited to acts arising out of, or in any way related to the incidents or circumstances which formed the basis for the above-captioned lawsuit, including such actions as may have been or may in the future be brought in the federal courts, the courts of the State of Connecticut, any state or federal administrative agency or before the Claims Commissioner pursuant to Conn. Gen. Stat.§ 4-141, et seq.

**F.   No Admission of Liability**

14. The Parties represent and warrant to each other that the parties specifically understand and agree that this Agreement is a settlement and compromise of their differences to resolve any and all claims that were raised or could have been raised in this action and is a compromise of disputed claims without any adjudication of the rights, claims and defenses of the parties.

15. The existence of this Agreement or any payment made hereunder shall not be construed as an admission of liability or of the truth of the allegations, claims, or contentions of any party, and that there are no covenants, promises, undertakings, or understandings between the parties outside of this Agreement except as specifically set forth herein.

16. This Settlement Agreement shall not be incorporated into any judgment of the Court. To the contrary, this is a private settlement agreement which the parties respectfully submit is a fair, reasonable and adequate resolution of this case.

**G.   Representations and Voluntary Actions**

17. The Parties represent, warrant, and agree that each has been represented by his, her, or its own counsel, that they have each thoroughly read and understood the terms of this Agreement, conferred with their respective attorneys on any questions in regard to this Agreement, and have voluntarily entered into this Agreement to resolve all differences as stated herein.

18. The parties acknowledge this Agreement is not effective unless and until approved by the legislature and must be submitted to the legislature for approval pursuant to Conn. Gen. Stat. 3-125a, and therefore the termination date of the Agreement is by agreement extended to August 1, 2022 to allow time to do so.

19. Notwithstanding the statutory requirements of Conn. Gen. Stat. 3-125a, defendants agree to continue their present policies, procedures and practices in accordance with A.D. 8.18, and to provide the reports provided by this Agreement.

20. The parties acknowledge that the Defendant has performed and continues to perform substantially all of the terms of the settlement agreement, which effectively has rendered the claims in this case moot.

21. The Parties acknowledge and agree that this Agreement represents the full and complete agreement of the Parties and that this Agreement supersedes and replaces any prior agreements, whether oral or written except orders of court extended in suit which shall survive. Any amendments or modifications of this Agreement, including to this sentence, must be in writing and executed by both parties to be effective.

**H. Stipulated Dismissal**

22. On February 23, 2022, the Court granted the parties' motion to amend the class definition, with the class now defined as follows:

    > "All inmates, both sentenced and unsentenced, who were, are, or will be confined in a Connecticut Department of Correction facility, since the filing of this complaint until August 1, 2022."

23. Throughout the duration of the Agreement the parties agree to resolve disputes and plaintiffs may seek to enforce the Agreement only pursuant to Section C, *supra*. The parties understand and agree that, if approved, and the Court consents, the Court will maintain jurisdiction of this

civil action throughout the duration of the Agreement to resolve any disputes which cannot be amicably resolved between the parties pursuant to the Dispute Resolution procedures set forth above in Section C of this Agreement. If the parties are unable to resolve any such disputes, with the assistance of the Settlement Judge, despite the Stipulated Dismissal, the Court may retain jurisdiction to enforce the provisions of the Agreement and that the Plaintiffs may seek specific performance of the Agreement, only, pursuant to Section C, supra.

24. On August 1, 2022, the plaintiffs will file a joint stipulated dismissal wherein the Court will order a dismissal with prejudice pursuant to Fed. R. Civ. P. Rule 41(a). This Agreement will not be incorporated into any Order of Dismissal but will nevertheless remain available to the parties to resolve disputes until August 1, 2022, and if necessary to order specific performance, after all of the procedures of Section C, *supra,* have been exhausted.

**I. Termination of this Agreement**

25. This Agreement terminates August 1, 2022 without any further action by the parties, and may not be extended without the consent of all parties. The Agreement, and all rights and obligations arising thereunder, shall terminate and shall no longer be enforceable on or after August 1, 2022.

26. Upon termination, without the need for any further order of any state or federal court, all jurisdiction of any court shall end. In the event any motions or proceedings are pending on or after August 1, 2022, the Court shall be bound to dismiss any such motions or proceedings as the court's jurisdiction shall have been terminated.

PLAINTIFFS

_____ _____        _____
John Knapp                    date                    Darnell Tatem                    date

_____ _____        _____
Jason Barberi                date                     Robert Barfield                  date

 PLAINTIFFS                                           DEFENDANT
Robert Barfield, et al.                                Angel Quiros, Commissioner, Connecticut Department of Correction

                                                      WILLIAM TONG
                                                      ATTORNEY GENERAL

By:_____                          By:_____ _____
Kenneth J. Krayeske                                    Terrence M. O'Neill
Kenneth J. Krayeske Law Offices                        Assistant Attorney General
Fed Bar  No. _____.                               Federal  Bar #ct10835
255 Main Street, 5th flr                               110 Sherman St.
Hartford, CT  06106                                    Hartford, CT 06105
C: 860-995-5842                                        Tel. 860-808-5450
F: 860-760-6590                                        Fax: 860-808-5591
attorney@kenkrayeske.com                               terrence.oneill@ct.gov


By:_____ _____                  By:_____ _____ \_\_\_\_
DeVaughn Ward                                          Steven R. Strom
Ward Law LLC                                           Assistant Attorney General
255 Main Street, 5th flr.                              110 Sherman Street
Hartford, CT 06106                                     Hartford, CT 06105
Tel: 860-351-3047                                      Federal Bar #ct01211
Email: dward@attyward.com                              Tel.:  (860) 808-5450
                                                       Fax:  (860) 808-5591
                                                       E-mail: steven.strom@ct.gov

Date_____                    Date_____