## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT BARFIELD, et al ) | | |
| Plaintiffs ) | | CIVIL ACTION NO.: |
| ) | | |
| V. ) | | 3:18-cv-01198 (MPS) |
| ) | | |
| ANGEL QUIROS ) | | |
| Defendant, in his official capacity ) | | |
| As Commissioner of the Connecticut ) | | |
| Department of Correction ) | | MAY 24, 2022 |

## MOTION TO APPROVE SECOND PROPOSED AMENDED SETTLEMENT AGREEMENT

The plaintiffs filed this 42 U.S.C. §1983 action in July 2018, contending that the defendant State of Connecticut Department of Correction ("DOC") commissioner's acts and omissions in response to Hepatitis C ("HCV") contravened their Eighth and Fourteenth Amendment rights.  DOC has denied any and all allegations of wrongdoing. After discovery, depositions, and a denial of a motion to dismiss, almost simultaneously the Defendant Commissioner of the DOC clarified the DOC's written HCV policy, and implemented a new policy which essentially mooted the Plaintiffs' claims. After the Court rejected an attempted first settlement agreement (ECF 159), the Court on February 23, 2022 approved an amended class certification, defining the class as follows:

> "All inmates, both sentenced and unsentenced, who were, are, or will be confined in a Connecticut Department of Correction facility, since the filing of this complaint until August 1, 2022." (ECF 204)

The parties have engaged in years-long, Court-supervised, arms-length settlement negotiations. After the first settlement failed, parties resumed settlement talks, the fruits of this second round now come to this Court for final approval of this Second Proposed Amended Settlement Agreement (ECF 207-1).

Pursuant to Local Rules, undersigned has conferred with opposing counsel about Defendant Quiros' position on this motion, and opposing counsel has responded: "defendant consents only to the granting of the motion to approve the settlement as fair, adequate and reasonable, but objects to any and all characterizations or comments in the memorandum as to DOC allegedly denying care or deliberately attempting to provide treatment for an improper motive. Contrary to these negative or pejorative statements, the DOC should instead be praised for implementing and accomplishing exemplary screening, testing and treatment for HCV, even during exceptional times due to the past two plus years during the worldwide Covid pandemic."

## I.    PROCEDURAL HISTORY OF THIS LAWSUIT

### A. Initiation of Lawsuit

Plaintiff Robert Barfield filed the initial Complaint in this matter on July 19, 2018. ECF 1. His initial allegations, in brief, claimed that the recent development and approval of direct-acting antivirals (DAAs) for the treatment of Hepatitis C (HCV) changed the standard of care. Before the development of DAAs, HCV treatment was based on Interferon formulations in injectable form in combination with orally administered ribavirin.  Declaration of Dr. Arthur Kim., ECF 51-1, ¶ 48a.

Since December 2013, next-generation DAAs were approved that greatly enhanced the likelihood of cure and for the first time made available a treatment that could cure greater than 90% of those living with HCV that could avoid the use of interferon. *Id*. at ¶ 48c.

DAAs are the standard of care; failure to provide DAAs is well below the standard of care.  Kim Dec. ¶55. Plaintiff Barfield alleged that the DOC failed to meet the new DAA-based standard of care with its outdated and antiquated policy G 2.04. Plaintiff Barfield alleged that he repeatedly asked DOC to provide him with DAAs, and that he was denied DAAs.

Plaintiff Barfield made classwide allegations that there were many more people like him in DOC custody who existed. Discovery demonstrated that as of March 31, 2018, 793 inmates in the custody of DOC tested positive for HCV according to a report generated through the DOC's electronic health records.  Defendant's Interrogatory Responses, ECF 51-7, Pg 7, ¶ 8.  Plaintiff claimed that DOC did not conduct routine opt-out testing for HCV, so this number was inaccurate.

Plaintiff Barfield maintained that DOC's original HCV policy G2.04 was woefully out of date, and acted as a bottleneck to stop people in DOC from actually receiving the life-saving DAAs. Dr. Kim opined that DOC's policy G2.04 created roadblocks to inmates receiving DAAs, and that G2.04 not only failed to reflect best practices, but interrupted the cascade of care to deny inmates coverage.

The defendant DOC denied any and all allegations of wrongdoing, and maintained that throughout the litigation, and even before the litigation, the DOC was providing constitutionally adequate testing and treatment for HCV.

3

**B. Course of Litigation**

The defendant commissioner filed a Motion to Dismiss and supporting memorandum on September 28, 2018. ECF 14, 14-1. Plaintiff responded with a motion to amend and a motion for joinder (ECF 23, 24) which the Court granted over objection (ECF 30, December 18, 2018).

Plaintiffs filed a Corrected, Amended Complaint on December 21, 2018, which included the four new plaintiffs (because DOC began treating Barfield with DAAs in October 2018 in what Plaintiff Barfield considered an attempt to moot this case). ECF 35. Plaintiffs' Corrected Amended Complaint sounded in four causes of action 1) Eighth Amendment injuries under 42 U.S.C. §1983; 2) Americans With Disabilities Act, 42 U.S.C. §12131, et seq.; 3) Rehabilitation Act. 29 U.S.C. §§ 791-794a and 4) deliberate indifference against Defendant Semple individually for his failure to supervise.

Plaintiffs moved for Class Certification under Fed. R. Civ. P. 23(a) December 20, 2018. ECF 34. Defendants filed a supplemental motion to dismiss (ECF 36, 1/4/2019). Plaintiffs filed a supplemental memorandum in support of class certification May 15, 2019 (ECF 51). Defendant Cook then objected to class certification. ECF 52, June 6, 2019.

Once the motion for class certification was fully briefed, Plaintiffs moved for preliminary injunctive relief and a declaratory order seeking a stop the DOC's ancient HCV policy and in its place, a multi-faceted order to force the DOC to begin testing and treating for HCV in line with the community standard of care. ECF 55, 7/15/2019.

4

On August 6, 2019, this Court denied the motion to dismiss (ECF 60) and certified a class under Federal Rule of Civil Procedure 23(b). ECF 61.  That same day, the DOC published a new HCV policy which basically met the tenets of Plaintiffs' motion for preliminary injunctive relief and declaratory order.  The defendant respectfully claims that this written policy memorialized in writing the past practices and procedures of the DOC with respect to HCV testing and treatment, and that at all times the plaintiffs were provided completely adequate care that far exceeded any constitutional or other federally protected rights of the plaintiffs.

DOC changed its written policy in August 2019 to clarify in writing that DOC would continue providing DAAs to eligible inmates. At that time, DOC initiated opt-out testing for HCV for all people in its custody.

After the May 2021 rejection of the first settlement agreement, Judge Sarah Merriam resumed mediation of the dispute (ECF 160, 161,  5/18/2021).

Despite the rejection of the agreement, DOC continued to adhere to the first agreement's reporting requirements, and submitted to this Court regular results of the new HCV policy (ECF 174, 198, 200, 210).  As of the latest reporting period ending March 30, 2022, 19,843 inmates have been tested for HCV and 1,955 have tested positive. ECF 210. DOC has provided DAA medications to 918 people in its custody, and no inmates were ineligible for treatment. ECF 210.

### C. Negotiation

After the Court rejected the first settlement agreement, parties engaged in new discussions with Judge Sarah A.L. Merriam. Parties spoke with settlement Judge Merriam at least 12 times (ECF ## 163, 164, 167, 168, 170, 171, 181, 186, 187, 190, 193, 196).

As with the previous settlement, this Proposed Second Amended Settlement Agreement required approval of the Connecticut General Assembly under Conn. Gen. Stat. §3-125a. This Court, having recognized the necessity of submission to the legislature and the fact that parties were not actively litigating, administratively closed this case August 24, 2021 (ECF 184) to wait for the next legislative session.

Understanding the Court's objection to the failed settlement agreement, parties submitted a proposed new agreement correcting the defect and a proposed new class definition on February 17, 2022 (ECF 201, 202). After a telephonic status conference with the parties February 21, 2022, the Court reopened the case and granted the change in class definition (ECF 204, 2/23/2022).

The Office of the Attorney General submitted the proposed second amended settlement agreement to the clerk of the General Assembly April 1, 2022 or thereabouts. After a public hearing April 11, 2022 in the Judiciary Committee, the settlement received a favorable report. Both chambers created resolutions (Senate Resolution 11 and House Resolution 13), but neither chamber acted on it, so the settlement became law May 1, 2022 because it was not acted on within 30 days.

Plaintiff class consented to the motion the defendants filed seeking a finding that there was compliance with the order giving notice to the class and that the giving of notice was

adequate. As may be expected in a large operation like delivering notice to almost 10,000 people in custody, a minor issues arose from a small mistake in failing to deliver individual notice to MacDougall-Walker. On April 8, counsel for Defendant Quiros learned that the retirement of a warden at MacDougall-Walker meant that notice was not distributed until Monday April, 4, 2022.

Given that something similar happened last time, Plaintiff's undersigned agreed to keep open the replies from MacDougall-Walker until May 4, 2022. Defendant Quiros counsel suggested MacDougall-Walker inmates would still have had 26 days to get any comments and/or objections, which was likely sufficient time under the circumstances.  No late comments from MacDougall-Walker arrived in any case.

### III. SETTLEMENT IS THE MOST APPROPRIATE RESOLUTION

The parties' proposed second amended settlement agreement (hereinafter, "Agreement," docketed at ECF 207-2) is detailed and creates a permanent structure for the testing and treatment of HCV for all persons in the custody of the DOC. The Agreement provides for a nominal payment of attorneys' fees and costs to plaintiffs' counsel, and a dispute resolution procedure in front of Judge Merriam in the event of Defendant Quiros' non-compliance with the measures in the Agreement. The Court granted preliminary approval of the settlement, set a

notice period running from April 1 through April 30, 2022 and set a Fairness Hearing date of

May 31, 2022. ECF 208, 3/15/2022.


### A. The Settlement Class

On February 23, 2022, this Court approved an amended class definition (ECF 204) for

the class as: "All inmates, both sentenced and unsentenced, who were, are, or will be confined in

a Connecticut Department of Correction facility, since the filing of this complaint until August 1,

2022."


### B. The Settlement Terms

Through the Agreement, Plaintiff Barfield, individually and on behalf of the class, will

execute a general release for class members relating to Hepatitis C injunctive relief claims only,

general releases for the four class representatives and a stipulation of dismissal.

Defendant Quiros has agreed to a nominal payment of $112,500 in attorneys' fees and

costs, and to maintain DOC Administrative Directive 8.18, "Hepatitis C Virus" through March 1,

2022. This Administrative Directive replaced the old HCV policy that Plaintiff Barfield sued on.

AD 8.18 uses the Federal Bureau of Prisons Policy as a blueprint to meet the community

standard of care. AD 8.18 requires opt-out testing, meaning that every person in the custody of

the DOC will be tested unless they opt out.

The Settlement Agreement, §B3, provides that the DOC will continue AD 8.18 through

the settlement period. DOC obviously may remove AD 8.18 after the settlement period expires,

but it seems unlikely given the threat that other inmates will step forward to file new HCV litigation. And, it is important to note that the Connecticut General Assembly recently passed, unanimously in the House of Representatives, Senate Bill 448, known now as PA 22-133, an Act Requiring the Development of a Plan Concerning the Delivery of Health Care and Mental Health Care Services to Inmates of Correctional Institutions. In part, this bill codifies in statute some of the settlement in *West v. Manson*, Civil Action NO. H-83-366 (AHN). Undersigned are optimistic that the legislature's increasing oversight of prison medical care will obviate the need for class actions like this in the future.

The Proposed Second Amended Settlement (Sec. B4) also requires Defendant Quiros to submit to this Court quarterly reports from December 31, 2020 through August 1, 2022 with the following information:

    a.  The inmate census for the last day of that period.

    b.  The number of inmates tested for Hepatitis C Virus (HCV) since August 6, 2019.

    c.  The number of inmates who cumulatively tested positive for HCV that period, to include:

    d.  The number of inmates who have refused testing for HCV

    e.  The number of inmates deemed ineligible for treatment for HCV

    f.  The cumulative total number of inmates taking or who have taken Direct Acting Antiviral (DAA) medications for the treatment of chronic HCV infection.

### C. Dispute Resolution Processes

This Proposed Second Amended Settlement Agreement continues the same informal dispute resolution process that revolves around the mediation of Judge Merriam. The process demands that Class Counsel detects problems with the DOC's application of AD 8.18, or if DOC unilaterally alters the policy during the settlement period, or other issues, then Class Counsel will provide DOC with a written, detailed notice of noncompliance. Within 30 days, DOC will provide a good faith response, and if the parties are unable to reach agreement, they shall contact Judge Merriam who will engage in appropriate mediation procedures. If that fails, then Class Counsel may move for specific performance of the material provision of the Settlement Agreement identified in the dispute resolution documentation.

While this is a short period of time given the termination of the agreement, parties have been acting and negotiating in good faith and believe that this dispute resolution process – which has not been needed to this point – will be sufficient to iron out any issues likely to arise.

### D. Termination

The Agreement sunsets on August 1, 2022.

### IV. LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) provides that "the court may approve [a proposed settlement] only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R.

Civ. P. 23(e)(2). If the parties negotiate a settlement before "class certification, as is the case here, it is subject to a higher degree of scrutiny in assessing its fairness." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). In these circumstances, the court examines "both the negotiation process and the settlement's substantive terms to determine its fairness." *Id*.

"Rule 23(e) provides that class actions may only be settled with the Court's approval. Fed. R. Civ. P. 23(e). Courts have discretion over whether to approve the class action settlement. See *In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (citing *In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1026 (2d Cir. 1992)). Before granting approval, 'the district court must determine that a class action settlement is fair, adequate and reasonable, and not a product of collusion.' *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). In exercising its discretion to determine whether a class action settlement is fair, a court 'should give proper deference to the private consensual decision of the parties' and 'keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation.' *Clark v. Ecolab, Inc.*, No. 04-CIV-4488 (PAC), 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks omitted). Courts should be 'mindful of the strong judicial policy in favor of settlements, particularly in the class action context' as '[t]he compromise of complex litigation is encouraged by the courts and favored by public policy.' *WalMart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (internal quotation marks omitted)." *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-CV-1113 (VAB), 2016 WL 6542707, at *6 (D. Conn. Nov. 3, 2016). "When deciding whether a class action settlement is fair, adequate, and reasonable, a court's 'primary concern is with the substantive

terms of the settlement,' which involves a 'need to compare the terms of the compromise with the likely rewards of litigation.' *Weinberger v. Kendrick*, 698 F.2d 61, 73- 74 (2d Cir. 1982). A court must also consider the settlement's procedural fairness by examining 'the negotiating process by which the settlement was reached.' Id. at 74. 'So long as the integrity of the arm's length negotiation process is preserved, however, a strong initial presumption of fairness attaches to the proposed settlement.' *In re Paine Webber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.), aff'd, 117 F.3d 721 (2d Cir. 1997)." *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-CV-1113 (VAB), 2016 WL 6542707, at *7 (D. Conn. Nov. 3, 2016).

## V. THE CONTENTIOUS NEGOTIATION THAT CREATED THE PROPOSED SETTLEMENT WAS PROCEDURALLY FAIR

"To determine procedural fairness, courts examine the negotiating process leading to the settlement." *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, No. 3:09CV1293 VLB, 2012 WL 3589610, at *3 (D. Conn. Aug. 20, 2012) (citation omitted). "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

In this case, there is no question that "the litigation was hard-fought and the settlement negotiations . . . were extended and involved the Court." *Ingles v. Toro*, 438 F. Supp. 2d 203, 213 (S.D.N.Y. 2006) (approving injunctive class settlement in prisoner lawsuit). Intense negotiations between the parties in this action began on December 19, 2019.

During the extensive negotiation process, the parties exchanged multiple drafts of settlement proposals and "engaged in a vigorous exchange regarding their respective claims and defenses," *Johnson v. Brennan*, No. 10-CIV-4712, 2011 WL 4357376, at *9 (S.D.N.Y. Sept. 16, 2011) (approving class settlement), speaking to Judge Merriam's chambers and/or to each other often, during the days, weeks and even months of the COVID-induced delays.

As Judge Merriam could attest, these exchanges were adversarial, underscoring the arm's-length nature of the process. *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), aff'd sub nom. *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) (approving class settlement as the product of arms-length negotiations, where "at points the negotiations were extremely contentious").

Prior to settlement, Class Counsel had reviewed hundreds of documents from Defendants in response to multiple sets of discovery requests. Class Counsel had heard from dozens of people in the custody of the DOC, much of which were first¬hand testimony in the form of declarations). Class Counsel had obtained expert testimony from Dr. Arthur Kim and took the depositions of Defendant's expect Dr. Chad Zawitz, as well as of witnesses from the Connecticut Department of Health. Defendants, in turn, had deposed Plaintiffs' medical expert and had provided declarations for a number of witnesses they intended to present.

Against this backdrop, "[b]oth the Court and the parties had a substantial evidentiary basis for evaluating the strengths and weaknesses of plaintiffs' claims and defendants' defenses." *Ingles*, 438 F. Supp. 2d at 213. Given the record developed at the point of negotiation, and their investigation of the facts against a shifting legal and factual landscape, counsel were not drafting

the Agreement on a blank canvas. To the contrary, they had a "clear view of the strengths and weaknesses of their cases and of the adequacy of the settlement." *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, 2012 WL 3589610, at *5 (internal citation omitted). "This factor therefore also supports approval of the settlement," as a strong indicator of a procedurally fair negotiation. *Id*.

## VI. THE PROPOSED SETTLEMENT AGREEMENT IS SUBSTANTIVELY FAIR, REASONABLE AND ADEQUATE BASED ON THE ASSESSMENT OF THE *GRINELL* FACTORS

The Agreement also is substantively fair, reasonable, and adequate. When determining whether a settlement agreement is substantively fair, reasonable, and adequate, courts consider the following factors, commonly referred to as the *Grinnell* factors:

1) the complexity, expense, and likely duration of the litigation;

2) the reaction of the class to the settlement;

3) the stage of the proceedings and the amount of discovery completed;

4) the risks of establishing liability;

5) the risks of establishing damages;

6) the risks of maintaining a class action through trial;

7) the ability of defendants to withstand greater judgment;

8) the range of reasonableness of the settlement fund in light of the best possible recovery;

9) the range of reasonableness of the settlement fund in light of the attendant risks of litigation.

14

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), abrogated on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); see also *O'Connor v. AR Res.*, 2012 WL 12743 at *2 (D. Conn. Jan. 4, 2012). Where, as here, the plaintiffs seek declaratory and injunctive relief rather than money damages, courts need not examine the last three factors. E.g., *Marisol A. v. Giuliani*, 185 F.R.D. 152, 162 (S.D.N.Y.1999) ("The court will not review the last three [*Grinnell*] criteria as they are applicable only in actions for damages, and will examine the fifth criteria in light of establishing remedies instead of damages."). "For a settlement to be substantively fair, not every factor must weigh in favor of settlement, rather, the court should consider the totality of these factors in light of the particular circumstances." *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, 2016 WL 6542707, at *7 (D. Conn. Nov. 43, 2016) (internal citations and quotation omitted).

Each of the six applicable *Grinnell* factors is analyzed below.

### A. The Length, Complexity and Duration of the Litigation set against the Hepatitis C Scourge Weighs in Favor of Approving the Proposed Settlement

Plaintiff class alleged that Defendant Quiros has failed, under the Eighth and Fourteenth Amendments, to meet the community of standard of care in providing DAAs to all people in DOC custody with HCV.  This case was part of a wave of right-to-access DAA litigation across the country: Pennsylvania, Massachusetts, California, Colorado, Minnesota, Indiana, Missouri, Tennessee and Florida, among others.

Defendant Quiros' predecessors Scott Semple and Rollin Cook denied any and all allegations of wrongdoing, and actively sought to end this litigation by treating every inmate that

15

signed on as a plaintiff. Indeed, the defendant maintains that this case is moot, as at all relevant times, even before the litigation commenced, the policy of the DOC was to test and treat inmates for HCV. Thus, the treatment of the plaintiffs was both in accordance with community standards, a standard considerably higher than the constitutional floor, and also consistent with DOC practice and procedure.  DOC continued to defend this litigation vigorously by twice moving to dismiss, objecting to class certification and contesting Plaintiffs' motion for preliminary injunction. Plaintiff class had amassed a significant body of evidence demonstrating the deliberate indifference inherent in the policy and practice and implementation of G2.04.

Defendant Cook, in plaintiffs' view, attempted to moot the entire litigation by adopting AD 8.18 and shelving the G2.04 policy. Indeed, throughout the litigation the defendant claimed that the action was moot because the DOC was already providing the testing and treatment that plaintiffs sought in the litigation.  Thus, it appeared that the parties were in agreement as to certain protocols for HCV testing and treatment. Rather than engage in complex injunctive relief motion practice and trial preparation, Parties entered into settlement posture after the pivotal date of August 6, 2019, when the class was certified and the amended complaint survived a motion to dismiss and Defendant Cook unveiled his new HCV policy, AD 8.18.

### B. The Reaction of the Class Members Does Not Weigh Against Approval

The second *Grinnell* factor, the class's reaction to the settlement, "is perhaps the most significant factor to be weighed in considering its adequacy." *O'Connor*, 2012 WL 12743, at *4 (citing *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001)).

Almost all class members currently incarcerated received notice of the Proposed

Settlement. The deadline for class members to respond and/or object to the Agreement was April

30, 2022. ECF 208.

Since the posting of Notice within each DOC facility, approximately 36 class members

have sent letters to class counsel, not counting the letter from Luis Otero to the Court (ECF 213).

Of those 38 letters, several came from the same writer. Exactly 15 of the letters, to this case,

lacked relevancy as the correspondents sought legal assistance with matters unrelated to HCV. [1]

Of the remaining 20 letter writers, 16 favored the settlement and 4 opposed it. Nine of the writers

requested a copy of the agreement, which undersigned provided.

For the 16 in favor, seven of the prisoners claimed that they have HCV and have not been

treated yet (Travis Lee Golden, Antonio Torres, John Johnson, Victor Figueroa, John Frost,

---

[1] As with the previous motion to approve, undersigned receives at least one letter every day or so from people in the custody of the DOC seeking counsel for civil rights and medical related issues. In keeping with this average flow of mail from inmates who have alleged they have received deliberately indifferent medical care at the hands of DOC, during the Notice Period, undersigned received approximately 15 of these letters.

None of this correspondence identifies the class notice document or the HCV litigation as a reason for writing Class Counsel. Prisoners write regular requests for representation and complain about DOC's provision of health services. Undersigned does not include such epistles here, in part because they may contain information protected by attorney-client privilege. Undersigned felt it wise to tell the Court such communication was received, but filtered out of this motion on relevancy grounds.

Class Counsel must acknowledge the seriousness of these allegations, yet "an individual inmate's objections regarding his own care are not directly relevant to the Court's inquiry into the fairness of the Settlement Agreement," *Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1459 (E.D. Pa. 1995). Most importantly, these experiences do not speak to the HCV settlement situation, and should not be taken into account. Should the Court request to see these 22 letters, Class Counsel will produce them in a form suitable for submission.

Dennis Hanton, Shauna Campbell). For these seven class members claiming not to have received adequate treatment, class counsel and Defendants' counsel are collaborating to understand the veracity of their claims. It may be that the letter writers are mistaken or misunderstood, and parties are working to ensure the letter writers' concerns are addressed. In any event, the seven people and their concerns about treatment are insufficient as a matter of law to prevent the Court from approving this settlement agreement.

Of the other positive letter writers, one letter expressed gratitude for receiving DAAs (Tan Prazeres). Another complained that DOC puts HCV positive and non-HCV-positive people together and does nothing to stop transmission (Joseph Saveriano). Another inmate, David Blinn, wrote "Prison has become part of our modern day rehab, with marginal services. With the success of Barfield we the community will make a large step in the right direction, with education, testing & treatment. This case is about saving lives, until you have seen a loved one in the hospital with liver failure there is a disconnect. Barfield has my 100% support & I am personally thanking them for their time & effort."

Of those four opposed, one writer, Scott Pickles, wrote two letters. Mr. Pickles opposed the settlement because of the short time between approval and termination of the agreement. Mr. Pickles wrote a second treatise to object that inmates have not all received AD 8.18, that HCV results are being withheld from inmates and that DOC is possibly not being honest with their screenings and results submitted to the court.

Luis Otero wrote almost the same letter to class counsel as he submitted to the Court, which indicates a general dissatisfaction with the DOC's overall provision of medical care. One

prisoner, Lishan Wang objects to the settlement because he at first rejected the HCV test in 2019, and claims to have asked for a retest but claims that DOC refused him. Counsel for the parties are investigating this, and class counsel will communicate with the individuals who wrote letters seeking treatment to explain to them the status of their situations. The final objector, Mark Karum, disagrees with the settlement because of an inability to hold DOC accountable to enforce the settlement agreement.

With the filing of this motion, Plaintiffs' undersigned submits on the electronic docket these relevant letters received between April 1 and April 30, 2022, in an effort to create full transparency and fairness to class members.

Class Counsel have reviewed every response, and have summarized them for the Court in a spreadsheet, and includes the original letters. ECF 216. Plaintiffs' counsel appreciates the class members who took time to respond to the Agreement.

The number of responses (from approximately 36 of 10,000[2] or so current class members) is not dispositive, as "the amount of opposition to the proposed settlement does not compel its rejection." *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (upholding approval of settlement where 13% of the class of incarcerated people submitted written objections in response to the notice of settlement); see also *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118–19 (3d Cir. 1990) ("only" 10% of the class had objected, which "strongly favors settlement"); *Boyd v. Bechtel*

---

[2] Current DOC inmate population is at https://portal.ct.gov/OPM/CJ-About/CJ-SAC/SAC-Sites/daily-Population-Counts/LineChart-Total last checked May 16, 2022.

*Corp.*, 485 F. Supp. 610, 624 (N.D. Cal.1979) (16% of the class objecting was deemed "persuasive" of the adequacy of the settlement).

The substance of the letters weighs in favor of approving the Settlement Agreement.

The few objections received do not speak to the fundamental fairness of the Agreement. See *Gaddis v. Campbell*, 301 F. Supp. 2d 1310, 1315 (M.D. Ala. 2004) (approving settlement for injunctive relief in prison suit where "[m]any of the objections filed in this case are based on incorrect information or a lack of understanding of the settlement agreement," including that the Agreement "lack[ed] provisions that it actually contains"). The short time period between the approval and the termination is a result of the fact that DOC has been complying with the settlement agreement during the time parties wait for a final approval, even after the first settlement was rejected last year and the case was administratively closed.

The feedback received from the class weighs in favor of approval of settlement.

### C. The Amount of Discovery Completed Was Substantial and Allowed the Parties to Sufficiently Investigate the Claims in this Case

The third factor, the stage of the proceedings and amount of discovery completed, weighs heavily in favor of approval. When weighing this factor, the Court "need not find that the parties have engaged in extensive discovery. . . . Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make an appraisal of the Settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d at 176 (internal quotations and citations omitted).

Between July 18, 2018 and August 6, 2019, the parties engaged in substantial discovery, which the Court can see is a sufficient investigation of the facts to appraise the settlement. Among other things, the parties:

• Conducted the depositions of Dr. Arthur Kim, and Dr. Chad Zawitz, the Plaintiffs' and Defendants' proffered expert witnesses;

• Exchanged expert witness declarations;

• Conducted depositions of two witnesses from the Connecticut Department of Health, Andrea Lombardi and Dr. Matthew Cartter, who were both involved in the CT Department of Health's HCV program and its interface with the DOC;

• Engaged in formal written discovery, including propounding and responding to dozens of interrogatories, requests for production, as well as informal discovery; and

• Exchanged hundreds of pages of documents over multiple productions.

Plaintiff class had gathered a body of evidence about the insufficient response of the HCV Utilization Review Board to counter the massive presence of HCV in Connecticut jails and prisons. Plaintiff class presented a well-sourced Motion for Preliminary Injunctive Relief based on these discovery exchanges.

There is no question that this intensive discovery process was "sufficiently adversarial that [it is] not designed to justify a settlement . . . [,but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998). Thus, this factor weighs heavily in favor of approval.

**D. The Risks of Establishing Liability are High**

Deliberate indifference is already a difficult threshold to meet, and when Defendants Cook and Quiros changed DOC's HCV policy in the middle of this case, Plaintiff Class was presented with an almost impossible task of demonstrating prospective, forward-looking deliberate indifference.

Once Plaintiff class filed the motion for preliminary injunctive relief and Defendant Cook responded with AD 8.18, Plaintiff Barfield's lawsuit catalyzed the change it sought. See *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001). Defendant denies that this lawsuit was a catalyst for the policy, but rather, that the policy clarified in writing and memorialized preexisting practices and procedures regarding testing and treatment for HCV.

With the new AD 8.18 in place, the ongoing reports from Defendant Quiros (ECF 139, ECF 144) demonstrate the DOC is in fact complying with its own policy. This compliance generates a current set of facts that create an extraordinary challenge for Plaintiff class at trial seeking injunctive relief. Therefore, the risks of establishing liability are so high as to merit an approval of settlement.

**E. The Risks of Establishing Damages and Obtaining Relief Also Are High and Weigh in Favor of Approval**

Much like the risk of establishing liability is high, because Defendant DOC Commissioners have ended the use of the damaging G2.04 policy, Plaintiff class faces a barrier in establishing damages under the new AD 8.18 policy. Defendant DOC commissioners

essentially granted the relief Plaintiff class sought without having to try the claims. While Plaintiff class could show damages stemming from the antiquated and retired Policy G2.04, Plaintiff class would perhaps even need to find an additional class representative to show damages under the DOC's AD 8.18 policy.

Plaintiff class would have an even more difficult time in showing how it is entitled to relief under the AD 8.18 policy. Defendant Commissioners Cook and Quiros appear to be following the mandates of AD 8.18 and testing and treating on the massive scale.

### F. Approval Would Remove the Need for Plaintiffs to Continually Defend the Class Form Thus The Final Applicable *Grinell* Factor Weighs in Favor of Granting It

The institution of AD 8.18 by Defendant DOC Commissioner Cook created a situation in this litigation that to go forward on an HCV claim of deliberate indifference seeking injunctive relief, Plaintiff class would likely need to find a new representative that had been wronged by the AD 8.18 policy. Maintaining the class form would present logistical challenges that should persuade this Court settlement is the best option.

Defendant DOC commissioners during the pendency of this litigation have repeatedly attempted to eliminate class representatives by treating them with DAAs.

### VII. CONCLUSION

For the reasons set forth above, the Court should  approve the settlement agreement as fair, reasonable and adequate, after conducting the fairness hearing required by  pursuant to Fed. R. Civ. P. 23(e).

PLAINTIFFS,
Robert Barfield, et al and Class Members

/S/ KENNETH J. KRAYESKE
Kenneth J. Krayeske, Esq.
Kenneth J. Krayeske Law Offices
255 Main Street, 5th Floor
Hartford CT 06106
(860) 995-5842
FAX: (860) 760-6590
eMail: attorney@kenkrayeske.com
Federal Bar # CT28498

/S/ DEVAUGHN WARD
 Devaughn Ward, Esq.
Ward Law LLC
255 Main Street, 5th Floor
Hartford, CT 06106
T: 860 351 3047
email: dward@attyward.com
Federal Bar # CT30321

## <u>CERTIFICATE OF SERVICE</u>

I hereby CERTIFY that on MAY 24, 2022 a copy of the foregoing Motion To Approve The Second Proposed Amended Settlement Agreement was electronically filed and served by mail on anyone unable to accept electronic filling. Notice of this filling will be sent by email to all parties by operations of the Court's electronic filing system or by mail to anyone unable to access the Court's electronic filing system as listed below. Parties may access this filing through the Court's CM/ECF System.

/S/ KENNETH J. KRAYESKE
Kenneth J. Krayeske, Esq.

25